STATE *Ex rel.* NORWOOD, ATTORNEY GENERAL *v.* NEW YORK
LIFE INSURANCE COMPANY.

## Opinion delivered December 14, 1914.

1. FOREIGN CORPORATIONS—RIGHT TO DO BUSINESS IN STATE—GRANT OF FRANCHISE.—A foreign corporation has no right to carry on an insurance business for which it may be organized, in this State, in common with domestic corporations and the citizens of this State; if it is permitted, or granted a franchise or license, to do business in this State, such permission or license to exercise its corporate powers is a privilege.

2. WORDS AND PHRASES—"PRIVILEGES," "PURSUITS," "OCCUPATIONS" DE-FINED.—The words "pursuits" and "occupations" are synonymous, and are used in their common acceptation to denote the principal business, vocation, employment, calling or trade of individuals, that but for some constitutional or statutory inhibition, could be exercised and enjoyed as of common right; but the word "privileges," as used in the Constitution of 1868 is not synonymous with the words "pursuits" and "occupations."

3. CONSTITUTIONAL LAW—TAXATION—"ALL PRIVILEGES" OF NO REAL USE TO SOCIETY.—The Constitution of 1868 which provides that all privileges * * * that are of no real use to society shall be taxed for certain purposes is not limited to privileges enjoyed by individuals, but includes also a franchise or privilege granted to a corporation to transact business in the State.

4. REVENUE—TAXATION OF LIFE INSURANCE COMPANIES—PRIVILEGE OF DOING BUSINESS.—Under article 10, section 17, of the Constitution of 1868, which provides that "the General Assembly shall tax all privileges, pursuits and occupations that are of no real use to society; all others shall be exempt, * * *" the act of April 25, 1873 (Kirby's Digest, section 4365), which attempted to tax life insurance companies for the privilege of doing business in the State, *held*, to be unconstitutional and void.

5. FOREIGN CORPORATIONS—FRANCHISE—PRIVILEGE—TAXATION.—The franchise or right of a foreign corporation is a privilege and can not be taxed under the provisions of the Constitution expressly exempting all "privileges" from taxation.

6. INSURANCE COMPANIES—TAXATION OF—NATURE OF BUSINESS—CONSTITU-TIONAL LIMITATION.—The franchise or privilege of conducting an insurance business is a useful occupation within the meaning of article 10, section 17, of the Constitution of 1868, which exempts from taxation all privileges which are of real use to society.

7. APPEAL AND ERROR—JUDGMENTS—SUFFICIENCY OF PLEADING AND PROOF. —Where the allegations of a complaint, alleged that an insurance company did not pay certain taxes, and the proof failed to show the amount of defendant's property on the day fixed by the statute

for filing schedules, *held*, the pleading and proof were too uncertain to show a right in the State to collect such taxes.

8. TAXATION—EXEMPTIONS—RECEIPTS OF INSURANCE COMPANY.—Act 1874-5, page 191 (Kirby's Digest, § 4338) levying an annual tax of 2½ per cent on the net receipts of all insurance companies doing business in the State, "in lieu of all other taxes and license fees," is not void as an exemption from taxation under the Constitution of 1874, article 16, section 6; nor is it void under section 5, which provides that all property shall be taxed according to its value, and no species at a higher rate than another.

9. TAXATION—RECEIPTS OF INSURANCE COMPANIES—RIGHT OF MUNICIPAL CORPORATION.—The provision of Kirby's Digest, § 4338 (§ 4, p. 191, Acts 1874-5), which makes the tax there imposed in lieu of all other taxes, is void, for depriving counties, school districts, and municipal corporations of the right to tax net receipts of insurance companies.

10. LICENSES—OCCUPATION TAX—INSURANCE COMPANIES.—The annual tax on the net receipts of an insurance company, doing business in the State, imposed by Kirby's Digest, § 4338 (§ 4, p. 191, Acts 1874-5) is valid as an occupation tax, since the Legislature has complete control over foreign and domestic corporations.

11. CONSTITUTIONAL LIMITATIONS—CONSTRUCTION OF STATUTES.—In construing a statute, the courts will adopt such a construction as will validate the same, if possible.

12. STATUTES—EFFECT OF PARTIAL INVALIDITY.—The entire act of 1874-5, p. 191, § 4 (Kirby's Digest, § 4338), is not rendered invalid, because one provision, levying a certain tax on insurance companies, is invalid.

13. TAXATION—RECEIPT OF INSURANCE COMPANY—OCCUPATION TAX—COLLECTION.—The duty of the Auditor under Kirby's Digest, § 4338, levying a tax on the net receipts of insurance companies, was merely to complete the percentage of the net receipts, and he did not act as an assessing board, whose findings would be conclusive and not reviewable, and the State may, in a proper action, collect past-due taxes, not paid because the defendant had made improper statements as to the amount of its receipts.

14. TAXATION—COLLECTION OF BACK TAXES—METHOD.—The Auditor may adopt any common law remedy to collect back taxes, and the remedy against insurance companies, as set out in Kirby's Digest, § 4338, is not exclusive. The Attorney General is the proper party to bring suit.

15. TAXATION—INSURANCE COMPANIES—OCCUPATION TAX—RECEIPTS.—Under Kirby's Digest, § 4338, in determining the net amount of the receipts of an insurance company for purposes of levying an occupation tax, the company may not deduct cash surrender payments from its receipts.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellant; *A. W. Dobyns, W. G. Riddick* and *W. H. Rector,* Special Counsel.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

WOOD, J.   This suit was brought by the Attorney General, on behalf of the State, to recover of appellee certain excise taxes alleged to be due under the act of April 25, 1873, and certain property taxes alleged to be due under the act of February 27, 1875. (Kirby's Digest, § 4338).

The Attorney General, in his brief, concedes here that the act of 1875, under which he seeks to recover property taxes, is unconstitutional and void, and he asks only for a decree recovering the excise taxes alleged to be due under the act of 1873, which is as follows:

"It shall be the duty of every company or association of another State, authorized to transact business in this State, to make report to the Auditor in the month of January of each year, under oath of the president, secretary or agent thereof, showing the entire amount of premiums of every character or description received by said company or association in this State during the year or fraction of a year ending with the thirty-first day of December preceding, whether said premiums were received in money or in the form of notes, credits, or any other substitute for money, and pay into the State treasury a tax of three per centum upon said premiums, and the Auditor shall not have power to grant a renewal of the certificate of said company or association until the tax aforesaid is paid into the State treasury." Kirby's Digest, section 4365.

Article 10, section 17, of the Constitution of 1868, under which the act was passed, provides as follows:

"The General Assembly shall tax all privileges, pursuits and occupations that are of no real use to society; all others shall be exempt, and the amount thus raised shall be paid into the treasury."

In *State* v. *Martin,* 60 Ark. 343, we said: "We must keep to the front certain familiar but unvarying rules when we come to interpret the provisions of any section of a Constitution. (1) Unambiguous words need no interpretation. (2) Where construction is necessary, words must be given their obvious and natural meaning. (3) The words or provisions under consideration must be construed with reference to every other provision, so as to preserve harmony in the whole instrument. (4) The intent of the framers, gathered from both the letter and spirit of the instrument, is the law."

Applying these familiar rules in the construction of the section of the Constitution under consideration, there can be no doubt as to its meaning. The language is really so plain that it needs no interpretation. It is a positive command to the General Assembly to tax "all privileges, pursuits and occupations that are of no real use to society," and as positively inhibits the Legislature from taxing those "privileges, pursuits, and occupations," that are of real use to society, for, after saying that the General Assembly shall tax "all privileges, pursuits and occupations that are of no real use to society," it expressly provides that "all others shall be exempt." The section contains a mandate and an inhibition. The one is as express and positive as the other.

Corporations are creatures of the State. But they are composed of, and are owned, controlled and managed by individuals. The special right or power conferred upon individuals to organize themselves into a corporation and to transact business in the form and under the name of a corporation is a privilege.

In *International Trust Co.* v. *American Loan & Trust Co.,* 62 Minn. 501, Judge Mitchell, speaking for the court, defined a privilege as follows: "A privilege as distinguished from a mere power, is a right peculiar to the person or class of persons on whom it is conferred, and not possessed by others. As applied to a corporation, it is ordinarily used as synonymous with 'franchise,' and means a special privilege conferred by the State, which does not belong to citizens generally of common right, and

which can not be enjoyed or exercised without legislative authority.'' See, also, 19 Cyc. p. 1452, and authorities cited in note 12, Words and Phrases, ''privilege.''

(1)   A foreign corporation has no right to carry on an insurance business, for which it may be organized, in common with domestic corporations and the citizens of this State. If it is permitted, or granted a franchise or license, to do business in this State, such permission or license to exercise its corporate powers is a privilege.

(2)   Learned counsel for appellant contend that the word ''privileges,'' as used in the Constitution of 1868, is limited by the words ''pursuits'' and ''occupations,'' which follow it, has something of the general meaning of those terms, and that the Legislature had in mind ''privileges,'' ''pursuits'' and ''occupations'' of individuals, and not corporations. The plain language of the section under consideration does not warrant such construction. The words ''pursuits'' and ''occupations'' are synonymous, and are used in their common acceptation to denote the principal business, vocation, employment, calling or trade of individuals, that but for some constitutional or statutory inhibition, could be exercised and enjoyed as of common right. But the word *''privileges''* is not used in the Constitution in the same sense as the words *''pursuits''* and *''occupations,''* and it has an entirely different meaning. The word ''privilege'' is not defined by any literary or legal lexicographer as synonymous with the words ''pursuit'' and ''occupations.'' See ''Privilege,'' Black's, Anderson's, Rapalje's, Bouvier's Law Dictionaries, Words & Phrases, Funk & Wagnall's Standard Dictionary, Webster's Dictionary, Century Dictionary.

Then what sanction have we for saying that the framers of the Constitution of 1868 used the word ''privileges'' in a sense different from both its literary and legal meaning. To give the word ''privileges,'' a different meaning from that already expressed would be doing violence to the familiar and fundamental rules of construction above referred to. The rule of *ejusdem generis* does not apply.

(3)   The language "all privileges" is exceedingly comprehensive, and we do not feel justified in saying that it is limited to privileges enjoyed by individuals, and that it does not contemplate the franchise or privilege granted to corporations to transact business in the State.

Nor, under this broad and all-embracing language, are we authorized to hold that the framers of the Constitution did not have in mind to limit the power of the Legislature to tax foreign corporations for the "privilege" of doing business in this State. To so hold would be far away from the plain language in which the provision is couched. Our present Constitution and the Constitutions adopted before the Constitution of 1868 contain, in substance, the following provision: "The General Assembly shall have power from time to time to tax hawkers, peddlers, ferries, exhibitions and privileges in such manner as may be deemed proper." Article 16, section 5, Constitution 1874; article 7 (Revenue), section 2, Constitution 1836; article 7 (Revenue), section 2, Constitution 1861; article 9 (Revenue), section 2, Constitution 1864.

Counsel contend that if article 10, section 17, of the Constitution of 1868 was a limitation upon the power of the Legislature to prescribe the terms and conditions upon which corporations might operate in this State, that the provision of the Constitutions above quoted is a like limitation. *Non sequitur.*

In *Baker* v. *State,* 44 Ark. 134-7, Judge Cockrill, citing and speaking of the cases in which this court had passed upon the provision of the Constitutions above mentioned, giving to the General Assembly the power to "tax merchants, hawkers, peddlers, exhibitions, and privileges," said:

"All of the cases in this court before and since *Washington* v. *State, supra,* concede that the Legislature can restrain or prohibit the use of any property or the exercise of any business or calling, if deemed to be against good policy or injurious to the public morals, but in the case last mentioned it was said that this restraint could not be exercised for the purpose of raising a State revenue by means of a license, because the act of licensing

would admit that it was neither immoral nor injurious. The idea that the State necessarily lends its countenance to everything that is licensed or taxed rests upon an apparent fallacy, for these are among the surest means of burdening recognized evils beyond existence, or by severe discipline, holding them within bounds, and the authority of the case in this respect has been disregarded by this court. We do not understand this case, reading it all together, to limit the power of legislation for State purposes to the taxation of such privileges as were technically known as such at the common law, notwithstanding an expression to that effect occurs in the opinion. We think the Legislature is not restrained by anything in the organic law from laying a tax on the franchise of a corporation, and the reasoning of the learned judge who delivered the opinion in Washington's case *supra,* leads to that conclusion.''

''The corporation owes its existence to the State, and the right to enjoy this privilege is the subject of taxation.''

''In the case of a foreign corporation the tax or license is paid for the privilege of exercising its corporate powers in the State.''

Thus the court held, under a constitutional provision granting to the General Assembly the power to tax ''privileges,'' that the Legislature could lay a tax on the franchise of a corporation; that the right to enjoy the privilege was the subject of taxation; that the tax or license is paid for the ''privilege'' of exercising its corporate powers in the State.

(4-5)    This decision is authority for holding, as we do, that the franchise or license of a foreign corporation is a privilege and can not be taxed under the provisions of a Constitution expressly exempting all ''privileges'' from taxation. The difference between the provision of the Constitution of 1868, under review, and that of the present Constitution and the Constitutions prior to 1868, above referred to, is as wide as the poles.

Under the Constitution of 1868, all the ''privileges'' that are of real use to society are exempt from taxation,

whereas, under the provision of the present Constitution and the Constitutions prior to 1868, the General Assembly was expressly granted the power to tax "privileges," and under this power the court held, of course, that the Legislature "is not restrained by anything in the organic law from laying a tax on the franchise of a corporation;" that such privilege is subject to taxation. But, conversely, the reasoning shows that if the court had been considering the provisions of a Constitution expressly prohibiting the taxation of privileges, as we have here, the holding would have been that the Legislature did not have the power to tax the franchise or privilege of a corporation to do business in the State.

Now, in the absence of constitutional limitation or inhibition, the Legislature had supreme power to grant to or withhold from foreign corporations the privilege of exercising their corporate powers within this State. They could have excluded them entirely or admitted them upon such terms as they deemed proper. *State* v. *Lancashire Fire Ins. Co.,* 66 Ark. 466. We must assume that the framers of the Constitution were familiar with this well established principle. We must assume also that they were familiar with the provisions of prior Constitutions, particularly the one then in existence, on the subject of revenue, which Judge Cockrill, in *Baker* v. *State, supra,* said did not restrain the Legislature "from laying a tax on the franchise of a corporation." Then if the makers of the Constitution of 1868 did intend to grant to the General Assembly the power to lay taxes on the franchise of corporations, why did they not copy the provisions of the then existing Constitution on that subject? Or why were they not silent, in which event the Legislature would have had the power? It is no answer to these questions to say that the framers of the Constitution by the use of the words "all privileges," did not have in mind the laying of taxes on the franchise of corporations, for, as Judge Cockrill says, "the right of the corporation to enjoy this privilege is the subject of taxation."

It necessarily follows that when the framers of the Constitution declared that "all privileges" of real use to

society "shall be exempt" that they meant what they said, and intended thereby to exempt "privileges" of corporations that were of real use to society.

So much for the very letter of the Constitution. But if the letter were doubtful, then we should look to the spirit, and may consider the history of the times—the environment of the convention—to ascertain its intention. *Hartford Fire Ins. Co.* v. *State,* 76 Ark. 303. Only three years before the State had emerged from a maelstrom of desolating war, in which her capital was engulfed, her industries destroyed, and by which her people were impoverished to the last degree. To stimulate the influx of foreign capital, in order to restore and increase her financial enterprises, and to again put her people on the road toward a permanent prosperity, the framers of the Constitution under these circumstances wrote into the organic law the exemption from taxation of all "privileges" that were of real use to society. Such was their manifest purpose to rehabilitate the State as soon as practicable in her financial resources and to lift her from the fearful ruin that the war had wrought.

(6)   That the franchise or privilege of conducting an insurance business is a useful occupation is not open to question. A business which provides indemnity to widows and orphans or other relatives for the loss occasioned by the death of one upon whom they are dependent, and a business that provides indemnity for the loss of property by fire or other casualty must be considered by all reasonable minds as of real benefit to society, and the Legislature could not arbitrarily determine otherwise.

Our conclusion, therefore, is that the provision of section 10 of the act of April 25, 1873, is unconstitutional and void. Having reached this conclusion, it is unnecessary to discuss other questions.

The decree is therefore affirmed.

McCULLOCH, C. J., and KIRBY, J., concur in judgment.

OPINION ON MODIFICATION.

McCULLOCH, C. J. The majority of the judges adhere to the conclusion announced in the former opinion

to the effect that the act of April 25, 1873, imposing a tax on foreign insurance corporations doing business in this State was in conflict with a provision of the Constitution then in force and therefore void. That was all the court decided, but counsel on both sides ask that we go further and decide other questions in the case. Counsel for the State asks us to decide the questions, which they claim are involved in the appeal, whether or not the funds of foreign insurance corporations temporarily held in bank for transmission to the home office are taxable here under general laws for *ad valorem* tax; and also whether or not notes, mortgages and other credits of such corporations held against debtors in this State are subject to taxation. Appellee's counsel ask us to decide, on cross-appeal, questions relating to the right of the Attorney General to maintain this suit, the effect of the statute of limitations on a suit to recover county, school and municipal taxes, and also the validity of the act of February 27, 1875, laying a tax of two and one-half per centum on net receipts of all insurance companies doing business in the State.

(7)   The chancellor decided that the act of 1875 was a valid enactment, and that it operated as a repeal of the act of 1873. He decided also that in ascertaining the amount of net receipts of insurance companies, sums paid out as cash surrender value on contracts of insurance should not be deducted, and rendered a decree against appellee for the sum of $504.23 for the amount of wrongful deductions from the amount of cash payments from taxable net receipts. The allegations of the complaint were too vague, and the proof not sufficiently definite to justify the court in passing on the question of the State's right to collect back taxes, that is to say *ad valorem* property taxes; therefore, we can not treat the question as being properly raised. The allegation of the complaint is merely a general one, that the defendant owned property during the years named on which it failed to assess and pay taxes, without any specification of the years or the amounts. The allegations are too indefinite to constitute a statement of a cause of action. Insurance companies,

like individuals, are required to list their property sub-
ject to taxation in the State, and to assess the amount on
hand the first Monday in June of each year. Kirby's Di-
gest, 6906. *Dallas County* v. *Banks,* 87 Ark. 484; *Dal-
las County* v. *Home Fire Ins. Co.,* 97 Ark. 254. The mea-
ger proof taken in this case does not show what appellee
had on hand in the State on the first Monday in June of
any year or that any property was on hand at that time.
All that the proof shows is that the company had a system
of weekly transmission of premiums to the home office,
the amounts being held in bank for that purpose. The
court would not have been justified in rendering any de-
cree against appellee under the pleadings and proof in the
case, therefore, we must pretermit any discussion of law
bearing upon the questions which counsel for the State
now raise.

This view of the case disposes of the question raised
by counsel for appellee concerning the bar of the statute
of limitations against the claim for collection of county,
school and municipal taxes. It is not contended that the
statute of limitations runs against the State, and as the
State recovered in this case for unpaid portions of the
occupation tax due on net receipts, there was no right of
action enforced in favor of a county, municipality or
school districts against which the statute of limitations
could be pleaded. Therefore, we decline to go into any
discussion of the question whether the statute can be
pleaded against a suit to recover taxes for the benefit of
counties, school districts and municipalities.

(8-9) This brings us to a consideration of the ques-
tion whether or not the act of 1875, prescribing a tax of
two and one-half per centum on net receipts is valid, and
that question must be tested in the light of this court's
conclusion that the prior act of 1873 was void. The act
of 1875 reads as follows:

"Every company doing insurance business in this
State shall file with the Auditor, at the same time with its
annual statement, a sworn statement of its net receipts in
this State for the year ending on the thirty-first day of
December, after deducting losses and commissions from

its gross receipts, and shall pay into the State treasury, on or before the first of March, a tax of two and one-half per centum on such net receipts, and such tax shall be in lieu of all other taxes—State, county or municipal—on such receipts, nor shall any city, town or municipality impose any license fee or privilege tax upon any company, or the agent of any company, for the privilege of transacting such business of insurance." Kirby's Digest, section 4338.

The statute just quoted is section 4 of the act of 1875, the purpose of which was to amend the act of 1873 in certain particulars. The first amendment brought about under the new statute was to change the control from the insurance commissioner to the Auditor, and then to change the amount of the taxes to be paid by insurance companies doing business in the State. The act of 1873, so far as the requirement of payment of taxes, applied only to foreign insurance companies, but the amendment under the act of 1875 made the requirement apply to all companies doing business in the State, which, of course, included both domestic and foreign corporations. The act of 1873, it will be observed, imposed a tax of three per centum on gross receipts, while the act of 1875 reduced the exaction so as to impose a tax only of two and one-half per centum on such net receipts, and to make that tax in lieu of all other taxes on such receipts. The contention is that that feature of the statute which makes the payment of the percentage on net receipts, in lieu of all taxes, operates as an exemption from other taxes on such receipts and void as being in conflict with provisions of our Constitution to the effect that all laws exempting property from taxation shall be void. Article 16, section 6, Constitution of 1874. We do not think that provision of the act of 1875 is an exemption, strictly speaking, within the meaning of the constitutional provision above referred to, but it does violate another provision of the Constitution which requires uniformity and equality in taxation, and for that reason is void. *Ex parte Fort Smith & Van Buren Bridge Co.*, 62 Ark. 461. It is also void for the reason that it deprives counties, school districts and munici-

palities of the right to exact taxation from this kind of property. So far as State taxes is concerned, it is not an exemption, for the Legislature evidently determined that the tax so exacted would amount to as much as an *ad valorem* tax on the net receipts. It does in fact exceed the amount of taxes for State purposes which may be levied under the Constitution. Section 8, article 16, limits the amount of State taxes to one per centum of the assessed valuation of the property.

(10-11) Treating this part of the act as void, the question arises then whether or not it affects the validity of the statute as a whole; in other words, if that part should be stricken out, is the statute valid in so far as it imposes a tax on net receipts? We are clearly of the opinion that the statute imposes an occupation tax and was intended as such. It would be void if treated in any other light, for it would violate the uniformity clause of the Constitution if it were treated as a property tax. The Legislature had complete control over the matter of imposing terms upon corporations, both domestic and foreign, and had the power to lay this imposition as an occupation tax. We must indulge the presumption that the Legislature intended to confine its activities within constitutional limits and to impose such a tax as was authorized by the organic law. In other words, it is our duty to give the act such construction as will make it valid, if that is consistent with the language used, rather than a construction that will render it invalid. There is a case cited by counsel for appellee which fully sustains our conclusion and is directly in point. *Atlanta National Building & Loan Association* v. *Stewart,* 109 Ga. 80.

(12) Are the two provisions of the act separable so that the validity of one may be preserved after the other is discarded? We think that they are separable, and notwithstanding the invalidity of that part of the section prescribing that the occupation tax so paid shall be in lieu of the *ad valorem* property tax, that part which imposes the occupation tax is valid. This is true, in the first place, for the obvious reason that the Legislature intended to provide some imposition by way of an occupation tax

upon insurance companies doing business in the State, and there is no reason to suppose that if they had had in mind that the provision making the tax to be in lieu of all other taxes was invalid, they would not have imposed the occupation tax. We can not, under those circumstances, assume that they would not have laid the imposition or that they would have lessened it by reason of the fact that it was not to be in lieu of the property tax. The law-makers were, in other words, dealing with the subject of an occupation tax, and we must assume that they intended to impose that part of the tax, regardless of the consequences in other respects.

There is also another cogent reason why we should not indulge the presumption that the Legislature would not have imposed this occupation tax if they had known that the provision for its being in lieu of other taxes would be held invalid. It is this: The act of 1873 prescribed a much more onerous imposition upon foreign corporations, and that statute still remained on the books and had had the effect of driving insurance companies from the State and keeping them beyond its boundaries. We know, as a part of the history of the State, that there were at that time no domestic insurance companies, and it is perfectly manifest that the Legislature in passing the act of 1875 meant to lessen the burdens imposed upon insurance companies so as to invite them into the State to do business. The law-makers, therefore, in carrying out their intention to lessen the burden, did so by reducing the tax from three per centum on gross receipts to two and one-half per centum on net receipts, and went still further and made that in lieu of the *ad valorem* property tax. Now, when the illegal provision is stricken out of the statute, it still operates as a lessening of the burden imposed by the former statute, and it would be doing violence to the obvious intention of the Legislature to assume that because they were not permitted to make this tax in lieu of the property tax that they would not have lessened that burden at all. There is no escape from the conclusion that the Legislature dealt with the subject under the impression that the act of 1873 was valid and still in force,

for the new statute was enacted as an amendment to the old one. So, the conclusion we reach is that the act of 1875 is valid insofar as it imposes an occupation tax of two and one-half per centum on net receipts of insurance companies.

(13-14)    It is contended on behalf of appellee that the Attorney General has no authority to institute a suit to go behind settlements made by the Auditor with the insurance companies, and recover for unpaid portions of an occupation tax. It is true there is no statute on this subject; for the act of 1913, amendatory of prior statutes, giving the Attorney General authority to institute actions to recover unpaid taxes on property which had escaped taxation by reason of having been assessed upon the wrong basis or on account of under-valuation, applies only to suits to recover property tax, and not an occupation tax. It was necessary to pass such a statute because the policy of the State has always been to make the findings of assessing boards conclusive and not reviewable at the instance of the taxing power except where the statute expressly gives the right of review. But the payment of this occupation tax is not based upon any assessment, and the Auditor does not act as an assessing board for the reason that the tax is imposed automatically on the amount of net receipts as shown by the settlements filed by the Auditor. The fact that the Auditor is required to withhold the certificate or license to do business does not make him an assessing officer in the sense that his findings are conclusive in the absence of a statute giving authority to some officer to sue. The tax is a liability which the State may recover in any action where it is shown that the proper amount was not paid. The statutory remedy whereby the privilege of doing business may be withheld by the Auditor until the tax be paid is not conclusive, and the State may adopt any common law remedy for collecting the amount due. *The Dollar Savings Bank* v. *United States,* 19 Wall. 227; *State* v. *Fleming,* 112 Ala. 179; *State* v. *Nashville Savings Bank,* 16 Lea (Tenn.) 111; *State of North Carolina* v. *Georgia Co.,* 19 L. R. A. 485. The Attorney General being the law officer of the State,

it is his duty to institute such actions. No special statutory authority is therefore necessary for this kind of an action.

(15) The judgment against appellee for the amount of the unpaid balance due on the occupation tax is correct. The court was right in its construction of the law in deciding that cash surrender payments could not properly be deducted in ascertaining the amount of net receipts for the reason that the cash surrender value under a policy is part of the contract and constitutes a continuing liability of the company which does not enter into the computation of the amount of net receipts. That part of the decree is also affirmed.

The writer and Mr. Justice Kirby concur in the judgment of affirmance, but do not agree to that result upon the grounds set forth in the former opinion, for we think the act of 1873 was not void, but that it was repealed by the act of 1875. The act of 1873 was not a privilege tax within the meaning of that provision of the Constitution which prohibits the imposition of taxes upon "privileges, pursuits and occupations," other than those of no real use to society. It must be remembered that this statute applied only to foreign corporations, and it was obviously intended by the Legislature as an imposition of terms upon which foreign corporations might do business in the State. The constitutional provision referred to related, in our opinion, merely to the taxation of privileges of those who were doing business in the State, and was not intended to restrict the power of the Legislature in prescribing the terms upon which foreign corporations might come here to do business. The Constitution of the State is not a grant of powers to the Legislature, but is merely a limitation upon the legislative power; therefore, where the Constitution is silent, the Legislature has full power. There is nothing in the Constitution of 1868 which in express terms restricted the power of the Legislature over foreign corporations, and the law-makers were therefore left unrestricted upon that subject. We think it is a stretch of meaning of the clause of the Constitution referred to to say that it prohibited the Legislature from placing any

burdens or obstacles in the way of foreign corporations doing business in the State. It is elemental that foreign corporations have no rights here except those which the State sees fit to confer. *State* v. *Lancashire Ins. Co.,* 66 Ark. 466; *Philadelphia Fire Assn.* v. *New York,* 119 U. S. 110. The privilege of doing business here may be entirely withheld, and there is nothing in the Constitution of 1868 which forbade the Legislature from excluding foreign corporations altogether. In fact, they were already excluded unless the law-makers saw fit to let them enter our domain. The effect of this decision is that under a provision of this sort, the Legislature can not impose any terms upon which foreign corporations may come here, because, forsooth, it operates as a tax upon the privilege. We think that the Legislature had unrestricted power over that subject, and that the act of 1873 was valid.

WOOD, J., dissenting. 1. That portion of the act of February 27, 1875, contained in section 4338 of Kirby's Digest lays a property tax and is unconstitutional and void. In plain terms it imposes a "tax of two and one-half per centum on the net receipts" of insurance companies doing business in this State, and in express terms says "such tax shall be in lieu of all other taxes—State, county or municipal—on such receipts." It thus fixes a definite rate on one species of property (net receipts) without any reference whatever to the general rate of taxation on other property in the State. The rate of State taxes on other property in the State was much lower than two and one-half per cent, and the municipal and county taxes varied, some being higher and some lower. So, the rate of State taxes fixed by this statute on the net receipts of insurance companies was not equal and uniform throughout the State, with the rate of taxation imposed on other species of property. Section 5, article 16, Constitution 1874, provides "All property subject to taxation shall be taxed according to its value, that value to be ascertained in such a manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected,

shall be taxed higher than another species of equal value." A similar provision is contained in all the Constitutions prior to the present one, and this court, from the first to the last has invariably ruled under this provision that "The Legislature had no power to discriminate, and fix upon one description or species of property, a greater tax than that fixed by law upon every other description or species of property of equal value, subjected to taxation." *Stevens and Wood* v. *State*, 2 Ark. 291; *Fletcher* v. *Oliver*, 25 Ark. 289; *Little Rock & Ft. Smith Ry.* v. *Worthen*, 46 Ark. 312-27; *Ex parte Ft. Smith & Van Buren Bridge Company*, 62 Ark. 461.

It follows that the act as a property tax is in plain violation of the Constitution. But if the act was intended simply to fix an occupation tax, or a tax on the privilege of doing business in the State, then it would not be unconstitutional, for the present Constitution contains no inhibition against an occupation tax on insurance companies or requiring that such taxes shall be equal and uniform.

2. The act of 1875, *supra*, has all the earmarks of a property tax and none of the distinguishing features of an occupation tax. If the Legislature had intended to impose an excise tax, entirely different language would have been employed. We must resolve every doubt in favor of the constitutionality of the statute, but should not give the language used a meaning obviously not intended. The intention must be gathered from the language used, giving some effect, if possible, to every part of the act. When these familiar rules of construction are followed here, there is no escape from the conclusion that the act now under review was intended to *lay a tax on property*. The language "shall pay a tax on net receipts" shows a property tax was intended. "Net receipts" are property. Then the words "such tax shall be in lieu of all other taxes—State, county or municipal—on such net receipts" show conclusively to our minds that the Legislature intended that the tax imposed by the act was "in lieu of State, county and municipal property taxes." If the Legislature had intended by this act to lay an occupation tax, would it not have said so in plain terms, or used language

from which such meaning could be reasonably inferred? For instance, if the Legislature had intended to lay an occupation tax, would it not have designated it in such plain terms as an "occupation" or "privilege" tax? The act makes no provision for forfeiture of the right to do business. It does not provide that the Auditor shall not issue the license to do business unless the tax is paid. In all statutes laying a privilege or occupation tax, some such language as the above is usually employed. See *New York Life Ins. Co.* v. *Bradley,* 65 S. E. 434-36. At the time of the passage of this act, the only privilege tax in existence was imposed by the act of 1873. That act at that time was in full force and effect, and if the Legislature of 1875 had intended the act under review as a substitute for the State privilege tax of 1873, it would have said so in plain terms, or used language that would have indicated a purpose to lay a privilege tax.

Numerous authorities are cited in the exhaustive brief of appellant to show that the act of 1875 lays a property tax and as such is in plain violation of the Constitution. It is conceded in the majority opinion that the clause "in lieu of all other taxes—State, county or municipal—on such receipts" violates that provision of the Constitution which requires uniformity and equality in taxation, and for that reason is void. This demonstrates conclusively the correctness of my conclusion. For, if it were a privilege tax, it could not violate any provision of our Constitution as to uniformity and equality of taxation, because, as we have seen, there is no provision of our Constitution requiring equality and uniformity in occupation taxes.

3. But the majority decides that the first part of the section laying the "tax on net receipts" is an occupation tax and that the clause "in lieu of all other taxes * * * on such receipts," although a property tax, may be eliminated, and the act thus upheld. We do not see how it is possible to so treat this act without entering the domain of legislation. The manifest purpose of the Legislature, as gathered from the whole act, and especially that clause which expressly says the tax levied shall be "in

lieu of all other taxes," was to provide for a commuted property tax. The purpose of so doing at that time was to lessen the burdens imposed upon insurance companies. But this could not be done by laying upon domestic companies an occupation tax which at that time they were not paying, nor by laying upon foreign companies an occupation tax in addition to the tax of three per centum for the privilege of doing business, which they were then paying under the act of 1873. The purpose of the Legislature being to lessen instead of increasing the burden of taxation at that time, it would not have passed the act with the "in lieu" clause eliminated. For with that clause eliminated, the insurance companies would have had to pay not only the two and one-half per centum, but the regular State, county and municipal taxes, which the Legislature thought by this "in lieu" clause it was eliminating. Even if the Legislature had intended the two and one-half per centum as an occupation tax, if it had known that the clause "in lieu of, etc.," was to be eliminated, who can say that it would not have made the tax, as an occupation tax, much less than two and one-half per centum. It seems to us that the "in lieu" clause so colors and permeates the whole enactment, that such clause can not be taken out and still leave such an act as the Legislature would have passed. On the contrary, by striking out the "in lieu" clause, we know that the purpose of the Legislature has been ignored, and an act entirely different from what was contemplated has been substituted. That, under our system of government, should not be done. *Ex parte Deeds,* 75 Ark. 542.

"If it is manifest from an inspection of the law itself that the invalid portion formed an inducement to its passage, the entire act will fail. It is not necessary that the invalid portion of an act of the Legislature should have operated as the sole inducement to the passage of the law to render the same void. It will have that effect if the void part to any extent influenced the Legislature in passing the statute." *State ex rel.* v. *Poynter,* 59 Neb. 417.

I therefore dissent from that part of the opinion which holds that section 4338 of Kirby's Digest is valid

as imposing an occupation tax. In other respects, I concur.

JUSTICE SMITH concurs in this dissent.