STATE EX REL ATTORNEY GENERAL *v.* ANDERSON-TULLY COMPANY.

4-2599

Opinion delivered September 26, 1932.

*Hal L. Norwood,* Attorney General, and *John M. Rose,* for appellant.

*Williamson & Williamson,* for appellee.

McHANEY, J. This is a suit for back taxes brought by the State on the relation of the Attorney General against appellee. The complaint alleged that tax was due the State, county and school districts by appellee by reason of the gross underassessments for the years 1925 to 1929, inclusive, of approximately 24,000 acres of timber- lands belonging to appellee in Desha County. It is alleged that said lands possessed a value of $50 an acre or more during said period, and that same should have been assessed at the average per cent. of value at which other real estate in said county was assessed for the same period, which is alleged to have been 30 per cent. It is

further charged that the average assessment of appellee's lands during said period was $4.17 per acre, which is only eight and one-third per cent. of the alleged value of $50 per acre, and is far below the basis on which other real estate in Desha County was assessed. It is further alleged that this assessment, same being between one-third and one-fourth as much as the average assessment of 30 per cent. applied to other property in the county, constitutes a fraud on the State, the county and the school districts in which the land is located.

To this complaint a demurrer was interposed on several grounds, the principal and only one necessary to be considered here being that the complaint does not state facts sufficient to constitute a cause of action within the provisions of act 281 of 1931. The court sustained the demurrer. Appellant declined to plead further. The complaint was thereupon dismissed for want of equity, and this appeal followed.

We think the trial court was correct in so holding. The provisions of act 281 of the Acts of 1931, page 951, are too plain to admit of construction. It is entitled "An act to Regulate the Collection of Overdue Taxes and for Other Purposes." The first section of the act, and the only one of any importance in connection with this lawsuit, provides: "That, after the assessment and full payment of any general property, privilege or excise tax, no proceedings shall hereafter be brought or maintained for the reassessment of the value on which such tax is based, except for actual fraud of the taxpayer, provided that failure to assess taxes as required by law shall be *prima facie* evidence of fraud." The act was approved April 1, 1931. It did not have any emergency clause, but the effective date of the act becomes unimportant, in view of the express language of the act as to cases which had not been finally determined prior to the effective date. By its own terms it provides that "no proceedings shall hereafter be brought or maintained," etc. We think there can be no doubt that the word

"maintained" as here used refers to the further prosecution of suits pending on the effective date of the act, except they be based on actual fraud of the taxpayer as provided in the act. In other words, all suits pending at the effective date of the act are abated unless amended to charge actual fraud according to the terms of the act. Otherwise the word "maintained" would have no meaning. We think the Legislature intended and very definitely expressed its intention to accomplish two things: (1) to prevent the bringing of any new proceedings, and (2) to prevent the further prosecution of any proceedings which may have been pending at the effective date of the act, except under the terms of the act. The Legislature will be presumed to have used the words "brought or maintained" with some purpose in view, and the courts will ascribe such meaning to the language used as the words ordinarily convey. Appellant says that the word "hereafter" indicates that the Legislature did not intend to give any retroactive effect to the act, and that statutes are to be construed as having a prospective operation only unless the intention of the Legislature to make them operate retrospectively is especially declared or necessarily implied. Such is the correct rule many times announced by this court. But this is a statute relating to procedure, and it is admitted that statutes involving matters of procedure are applicable to pending litigation. *Foster* v. *Graves,* 168 Ark. 1033, 275 S. W. 653. Using the words "brought or maintained" in their ordinary signification, we have no doubt that the Legislature meant to prevent the bringing of back-tax suits, or maintaining such as were already brought, except under the terms of the act.

This brings us to a consideration of the question as to whether the complaint charged actual fraud of the taxpayer, and whether the proviso in § 1 of the act "that failure to assess taxes as required by law shall be *prima facie* evidence of fraud" is sufficient to put appellee on its proof and therefore to answer the complaint. We

answer both questions in the negative, as did the learned trial court. The complaint charged no actual fraud of the taxpayer. It did charge that its land was greatly underassessed. It did not charge that appellee assessed its own land, nor could it well have done so, as the law places no duty upon the taxpayer in connection with the assessment of real estate except to list his property with the proper assessing officials. The complaint does not charge that this duty was neglected. A careful review of the revenue laws of this State fails to reveal any duty imposed upon the taxpayer in connection with the assessment of his real property for taxation except as stated above. The whole duty in this regard rests upon officials of the tax collecting agency, officials of the county and State. The Constitution, art. 16, § 5, provides: "All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct." The General Assembly has provided the manner in which the value of property is to be ascertained. Section 9874 *et seq.*, Crawford & Moses' Digest. See also act 129, Acts of 1927 and 172, Acts 1929. Section 5 of the latter act provides that for the year 1929, one of the years involved in this litigation, "the county clerk shall extend taxes against such property based on the assessed valuation thereof for the year 1928, plus the value of any new improvements located thereon and valued or assessed by the assessor as by law required, provided, however, that the provisions of this section shall not be construed to prohibit or restrict the county equalization board of any county in equalizing the assessed value of such property for the year 1929." Not only does this constitute a legislative assessment of appellee's lands for the year 1929, but it is a legislative finding of the correctness of the assessment for 1928 because the assessment for 1929 is made the same as that of 1928. The complaint in this case simply fails to allege any "actual fraud of the taxpayer." The mere acquiescence of the taxpayer in an

underassessment made by the assessing officials, no matter how grossly undervalued, would not constitute actual fraud of the taxpayer. To constitute fraud on his part would require something more than mere acquiescence. It would require some active participation in the fraud of the assessor, as, for instance, a conspiracy between them to undervalue the property. But it is said by appellant that a gross underassessment comes within the proviso and constitutes *prima facie* evidence of fraud, sufficient to put appellee on its proof and therefore to require an answer. We do not think so. There was no failure upon appellee's part or that of the assessing officials of Desha County to assess appellee's lands for taxes at the time and in the manner provided by law, even conceding an underassessment. The language of the act is that the fraud for which a reassessment will be permitted is the actual fraud of the taxpayer. If the law imposed the duty upon the taxpayer to assess his real estate, and he fraudulently or grossly underassessed it, the proviso in the act might have some application. In the case of real estate the law imposes no duty upon the taxpayer as to any valuation to be placed upon it, the only duty being to list his property with the assessing officials, and, if such officials make a gross underassessment without any fraudulent procurement on the part of the taxpayer, it could not be said to be the act of the taxpayer in any respect.

It is suggested by counsel for appellant that act 281 is unconstitutional and therefore void. We do not agree with appellant in this regard, nor shall we undertake an extended discussion of the grounds upon which the unconstitutionality of the act is suggested. It is admitted by counsel for the appellant that the whole proceedings for the reassessment of property and for the recovery of back taxes are purely statutory, and without such authority no such action would be available. It is also conceded that the Legislature has the power to amend or repeal such statute. We have many times so held. *State*

v. *Standard Oil Co. of La.*, 179 Ark. 280, 16 S. W. (2d) 581, and cases there cited. We there said: "The power of the State to maintain suits such as the one at bar being purely statutory, the method and procedure prescribed by the statute must be followed as a condition precedent to its right to maintain such action. * * *" The original back-tax statute of the State has many times been held to be constitutional, both by this court and by the Supreme Court of the United States. This being an act in the nature of an amendment must of course be held to be within the power of the Legislature to enact.

Other questions are discussed in the excellent briefs of counsel for both sides, but we find it unnecessary to discuss them. We have reached the conclusion that the trial court was correct in sustaining the demurrer to the complaint, and its judgment must be affirmed. It is so ordered.

MEHAFFY, J., (dissenting). I do not agree with the majority in holding that act 281 of the Acts of 1931 is retroactive. The majority opinion holds that it was the intention to accomplish two things: first, to prevent the bringing of any new proceedings; second, to prevent the further prosecution of any proceedings which may have been pending at the effective date of the act, except under the terms of the act.

I think if the Legislature had intended that the act should be retroactive, it would have said so in so many words, and I think that the expression of the Legislature, "no proceedings shall hereafter be brought or maintained," etc., has reference to future suits and not to suits already brought. Of course, the question is the intention of the Legislature, but that intention must be ascertained from the language used by the Legislature.

"It is said that a law will not be given a retrospective operation unless that intention has been manifested by the most clear and unequivocal expression. * * * The rule is that statutes are prospective, and will not be construed to have retroactive operation unless the language

employed in the enactment is so clear it will admit of no other construction." Lewis-Sutherland on Statutory Construction, Vol. 2, 1157 *et seq.*

"Even though the Legislature may have the power to enact retrospective laws, a construction which gives to a statute a retroactive operation is not favored, and such effect will not be given unless it is distinctly expressed, or clearly and necessarily implied, that the statute is to have a retroactive effect. There is always a presumption that statutes are intended to operate prospectively only, and words ought not to have a retrospective operation unless they are so clear, strong, or imperative that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied. Every reasonable doubt is resolved against a retroactive operation of the statute." 25 R. C. L. 787-788; 59 C. J. 1161; *People* v. *Foreman,* 296 Ill. 497, 129 N. E. 788; *Walton* v. *Woodward,* 73 Kan. 238, 84 Pac. 1028.

It is held by the majority, however, that the act is retroactive because it uses the expression "brought or maintained." I do not think "maintained" has any such meaning here, and it cannot be said that it was so clearly the intention of the Legislature to make the act retroactive that there can be no doubt about it. The Legislature could have said, and if it intended that it probably would have said that this act shall apply to pending suits. I think it was clearly the intention of the Legislature to provide that hereafter no suit should be brought and maintained except for acts of fraud, etc.

The act provides that it shall take effect, and be in force from and after its passage. That necessarily meant ninety days after the adjournment of the Legislature, and it was, in my judgment, not the intention of the Legislature that it should apply to pending suits.

A suit might have been pending at the time of the act, and might have been disposed of before ninety days elapsed. In that case, of course, it could not apply.

The word "maintained," if it had been used alone, would have meant, "to begin and prosecute the action to final judgment."

In a Connecticut statute, the Legislature used the word "maintained", and it was contended that this made the statute retroactive. The Supreme Court of Connecticut, however, said: "We have therefore no question as to the constitutionality of a law which in direct and positive terms is made to act retrospectively; our duty is simply that of construction.

"One of the firmly established canons for the interpretation of statutes declares that all laws are to commence in the future and operate prospectively, and are to be considered as furnishing a rule for future cases only, unless they contain language unequivocally and certainly embracing past transactions. The rule is one of such obvious convenience and justice as to call for jealous care on the part of the court to preserve and protect it. Retroaction should never be allowed to a statute unless it is required by express command of the Legislature or by an unavoidable implication arising from the necessity of adopting such a construction in order to give full effect to all of its provisions." *Smith* v. *Lyon,* 44 Conn. 175; *Burbank* v. *Inhabitants of Auburn,* 31 Maine 590; *Gunpper* v. *Waterbury Traction Co.,* 68 Conn. 424, 36 Atl. 806.

The act of 1931 provides that no proceedings shall hereafter be brought or maintained for the reassessment of the value of property after the assessment and full payment of any general property privilege or excise tax.

Section 2 of the act provides that all suits which may be brought under the provisions of the act shall be conducted by the Attorney General as other suits brought in the name of the State.

When the whole act is read, it seems to me to be perfectly clear that the Legislature did not intend the act to be retroactive. If it had, it would have used words that made it clear beyond doubt. It did not do this. On

the contrary, section 2, which has reference to the suits provided for by this act, does not use the word "maintained" at all.

I think that the complaint stated a cause of action under act 281 of the Acts of 1931.

The second amendment to the plaintiff's complaint not only alleged that the lands were worth $50 or more an acre, and that they were assessed for $4.17 an acre, but it also alleged that the assessment was far below other similar property, and was slightly more than one-fourth as much as other real estate generally in the county was assessed; that the assessments were so grossly inadequate as to shock the conscience and constitute an actual fraud by defendant.

It further charged that the lands were timber lands, and located in the overflow area of the Mississippi River, and covering so vast an area that it made it difficult or impossible for the taxing officials to make any estimate of the value thereof, but that said officials were compelled to rely wholly on the representations of defendant as to said value, and all former assessments have been made on the faith of such representations. It might be that the complaint was such that the court should have sustained a motion to make more definite and certain, but certainly it charged fraud committed by the defendant, because it said that the taxing officials were compelled to rely and did rely on the defendant, and that defendant made the representation as to the value of the property, and fraudulently stated that it was worth less than one-fourth of its actual value, and that the taxing officials relied on these representations, believing them to be true. This is certainly the meaning of the allegation, and I think is sufficient to charge actual fraud. Of course, whether these are true would depend upon the evidence.

This court has frequently held that in testing the sufficiency of a pleading by general demurrer, every reasonable intendment should be indulged to support it. *Ellis* v. *First Natl. Bank,* 163 Ark. 471, 260 S. W. 714.

"Contrary to the common-law rule, under our Code every possible intendment and presumption is to be made in favor of a pleading, and a complaint will not be set aside on demurrer unless it be so fatally defective that, taking all the facts to be admitted, the court can say that they furnish no cause of action whatever." *Wright* v. *Lake,* 178 Ark. 1184, 13 S. W. (2d) 826.

Taking the facts to be admitted in this case, it is admitted that the defendant itself made false representations, and that it was impossible for the taxing officers to ascertain the value of the land otherwise, and that they relied on the representations made by the defendant.

Can it be said that these facts, if admitted, furnish no cause of action whatever? I do not think so.

The complaint also alleged that appellant failed to assess its taxes as required by law. The act expressly provides that such failure shall be *prima facie* evidence of fraud. The act as construed by the majority does not mean anything. There could not be a suit maintained under it. I think if the Legislature had intended to repeal the law, it would have said so.

I think the complaint charges fraud on the part of the defendant, and that the case should be reversed and remanded for trial.

Mr. Justice Humphreys agrees with me in the views herein expressed.