STATE, EX REL. ATTORNEY GENERAL, *v.* NEW YORK LIFE INSURANCE COMPANY.

4-5557           131 S. W. 2d 639

Opinion delivered July 10, 1939.

*Jack Holt*, Attorney General; *A. D. DuLaney* and *Lee Cazort*, for appellant.

*Rose, Loughborough, Dobyns & House*, for appellee.

SMITH, J. This case, a precursor of others of similar purpose, was filed July 5, 1938, under the authority and direction of § 7968, Pope's Digest, which provides that "If it should be found, upon investigation made by the Attorney General or the Arkansas Tax Commission, that any life, fire or accident insurance company doing business in this state has for any year or years failed, for any cause, to pay all the tax due by it, suit for such unpaid taxes shall at once be brought by the Attorney General against any such company owing such taxes. . . ."

The question here presented for our decision is stated to be: "Is the appellee (Life Insurance Company) liable for (back) taxes on premiums received for Annuity Insurance Policies under § 7965 of Pope's Digest, which requires that 'Every life . . . insurance company . . . doing business in this state, shall file with the Auditor or Insurance Commissioner at the same time it makes its annual statement, a sworn statement of its gross premium receipts in this state for the year ending the 31st day of December next preceding, and on such gross receipts each of said companies shall pay into the State Treasurer on or before the first day of March of each year, a tax of two and one-half per cent. . . .' "

It was alleged that appellee is a foreign life insurance corporation engaged in the business of writing life and health insurance, and issuing various kinds of annuity insurance policies, for which it collected premiums. The company was required to make and file with the Insurance Commissioner an annual sworn statement of its gross premium receipts on all business done in this state, and to pay to the treasurer of the state each year to and including 1930 a tax of two per cent., and from 1931, to pay a tax of two and one-half per cent. on such gross receipts for the privilege of doing business in this state.

Appellee has not reported, in its sworn annual tax statements to the Insurance Commissioner, the premiums received by it on annuity policies of insurance. The amount so collected for the Year 1925 and each subsequent year is stated.

An answer was filed, denying liability for the taxes on various grounds, only two of which will be considered.

The first is whether the Insurance Company is liable for the tax. Upon this question exhaustive research is manifested in the briefs of opposing counsel.

The earliest cases on the subject construing statutes similar to our own statute, above quoted, are *Commonwealth* v. *Metropolitan Life Ins. Co.*, 254 Pa. 510, 98 Atl. 1072, and *People, ex rel. Metropolitan Life Insurance Co.*, v. *Knapp*, 231 N. Y. 630, 132 N. E. 916, in each of which cases it was held that a tax against a foreign insurance company, on the consideration received for granting annuities, was not subject to the tax imposed upon insurance premiums. The first of these cases was decided July 1, 1916, the last by the Court of Appeals of New York, July 14, 1921.

It appears that, upon the authority of those two cases, the Insurance Commissioner of this, and of all the other states, assumed that premiums or sums paid for annuity insurance were not taxable as insurance premiums, and the insurance companies were not required by the Insurance Commissioners of the respective states, in which the various companies were authorized to do business, to report premiums collected for annuity insurance for purposes of computing the tax due on insurance premiums collected.

There are other cases to the same effect, which we shall not review. But the cases on the subject are not harmonious. Indeed, the New York case, above cited, which is treated as one of the leading cases on the subject, affirmed, in a per curiam opinion, from which two of the justices dissented, the opinion of the Supreme Court, Appellate Division, (193 App. Div. 413, 184 N. Y. Supp. 345) from which two of the justices had also dissented.

These two cases are reviewed at length by the Supreme Court of Iowa in the case of *Northwestern Mutual Life Ins. Co.* v. *Murphy, Commissioner,* 223 Ia. 233, 271 N. W. 899, 109 A. L. R. 1054, in which a statute similar to our own was construed. In an opinion, which was unanimous, the Supreme Court of Iowa declined to follow the New York and Pennsylvania Cases, and held (to quote a headnote): "1. The consideration received by an insurance company for its undertakings to pay annuities is properly included in the amount upon which the company is liable to a tax imposed by a statute requiring every foreign insurance company to pay annually into the state treasury as taxes. a stated percentage 'of the gross amount of premiums received by it for business done in this state, including all insurance upon property situated in this state and upon the lives of persons resident in this state during the preceding year.'"

Numerous cases are cited in the briefs, and it is said—and may be true—that the weight of authority sustains the view of the Pennsylvania and New York courts. But the decisions of the Supreme Court of New Hampshire in the case of *New York Life Ins. Co.* v. *Sullivan,* 89 N. H. 21, 192 Atl. 297, and of the Supreme Court of Massachusetts in the case of *Mutual Benefit Life Ins. Co.* v. *Commonwealth,* 227 Mass. 63, 116 N. E. 469, accord with the view which we adopt. Expert witnesses called by the insurance companies differentiated annuity and other insurance, but the fact remains, in our opinion, that it is insurance, and that money paid for annuity insurance must be regarded as premiums paid for insurance.

We are much persuaded in reaching this conclusion by the extensive discussion of the subjejct by Professor Huebner, Professor of Insurance and Commerce in Wharton School of Finance and Commerce, University of Pennsylvania, and President of the American College of Life Underwriters, in his textbook on Life Insurance. He devotes an entire chapter to the subject of Annuities, and differentiates the various types of annuities. We accept the view of Professor Huebner, rather than that of judges, who, like ourselves, have only occasional con-

tacts with the subject. He says, at page 154 of the chapter on Annuities (3rd Ed.): "Many believe that the growth of the annuity business will be the outstanding feature in the life-insurance business during the next quarter of a century. . . The purpose of the annuity, it is seen, is to protect against a hazard—the outliving of one's income—which is just the opposite of that confronting a person who desires life insurance as protection against the loss of income through premature death. Technically, however, the two types of contracts are closely related to each other, since the cost of both is computed on the basis of similar data and principles. Sight should not be lost of the fact that annuities are simply another important means of insurance."

We conclude, therefore, that sums of money paid for annuity insurance, which all the witnesses refer to as premiums, are taxable under the statute hereinabove quoted.

It does not follow, however, that the state should recover in this action. It will be remembered that this is not a suit for current premiums. It is a back tax suit. The court below found there could be no recovery in this case, but the decree does not recite the ground upon which that relief was denied. In our opinion, there can be no recovery, because of the provisions of § 13899, Pope's Digest, which reads as follows: "After the assessment and full payment of any general property, privilege or excise tax, no proceedings shall hereafter be brought or maintained for the reassessment of the value on which such tax is based, except for actual fraud of the taxpayer, provided that failure to assess taxes as required by law shall be *prima facie* evidence of fraud."

It will be observed that the inhibitions of this statute are not directed against suits for the collection of the general or ad valorem taxes alone. It applies also to suits for the collection of privilege and excise taxes. In the case of *State, ex rel. Attorney General* v. *New York Life Ins. Co.*, 119 Ark. 314, 171 S. W. 871, 173 S. W. 1099, it was held that premium taxes are excise and privilege taxes. See, also, *Hixon* v. *School District of Marion*, 187

Ark. 554, 60 S. W. 2d 1027; *Sparling* v. *Refunding Board,* 189 Ark. 189, 71 S. W. 2d 182; *Thompson* v. *Wiseman,* 189 Ark. 852, 75 S. W. 2d 393.

It appears that, prior to 1927, there were no restrictions on the institution of suits to collect back taxes; but in that year the General Assembly passed Act 129, of which § 2038, Pope's Digest, is a part, requiring that the Tax Commission first Authorize such suits. This act was upheld in the case of *State, ex rel. Attorney General* v. *Standard Oil Co. of La.,* 179 Ark. 280, 16 S. W. 2d 581.

In 1929, the General Assembly passed Act 174, prescribing a limitation of five years on suits for back taxes on tangible property, and a limitation of seven years on suits for back taxes on intangible property.

This right to sue for back taxes was further restricted by Act 281 of the 1931 session of the General Assembly, of which § 13899, Pope's Digest, hereinabove quoted, is a part. This Act was upheld in the case of *State, ex rel. Attorney General* v. *Anderson-Tully Co.,* 186 Ark. 170, 53 S. W. 2d 17, 85 A. L. R. 100, in which case it was said that the whole proceedings for the reassessment of property and for the recovery of back taxes are purely statutory, and without such authority no such actions could be maintained. This opinion was unanimous, except that two members of the court were of opinion that the act did not apply to suits pending at the time of its passage.

This Act of 1931 was again upheld in the case of *State ex rel. Attorney General* v. *Chicago Mill & Lbr. Co.,* 187 Ark. 65, 58 S. W. 2d 951. In that case it was alleged that there was fraud in the assessment of the personal property of the corporation proceeded against, for the reason that its personal property had been grossly undervalued. After holding that the undervaluation did not constitute fraud, the suit was dismissed. It is the failure to assess taxes which, by the act, is made *prima facie* evidence of fraud.

Here, it is conceded that the Insurance Company made report of the premiums collected and paid the taxes due thereon. It did not report its annuity premiums; but there was no element of fraud in this. It made report

of all premiums upon which a report was required. The affirmative testimony is to the effect that over a period of many years the administrative officers of this state were of the opinion that annuity premiums were not taxable, and members of this court are even now of that opinion, as evidenced by the concurring opinion which has been filed in this case.

To permit, at this time, a back assessment, for a period of thirteen years, would impose a burden on a group of policyholders, many of whom had no connection with annuity contracts being taxed. There was not, it is true, any statement or assessment of the total premiums received, but a statement was filed of all premiums thought to be taxable. Appellee, Insurance Company, concealed nothing, but correctly disclosed all the information required. The blanks furnished by the state required the insurance company to disclose the premiums received from "Ordinary," "Group," and "Industrial" policies, and this was correctly done. The statute prohibits suits for back taxes "except for actual fraud of the taxpayer." Here, there is no element of fraud, and for that reason the suit was, in our opinion, properly dismissed.

The decree is affirmed. Justice HUMPHREYS is of opinion that the suit is not barred and dissents for that reason. Justices McHANEY and BAKER are of opinion that annuity premiums are not taxable, but concur in the judgment of the court holding the suit barred. Justice HOLT nonparticipating.

McHANEY, J. (concurring). I agree that the opinion of the majority holding that this action is barred by reason of the provisions of § 13899 of Pope's Digest is correct. But I do not agree with the conclusion of the majority that the amounts paid by purchasers of annuity contracts are taxable under existing legislation.

By act 220 of 1913, the legislature of this state for the first time imposed a tax on the "gross premium receipts" of life and other related insurance companies, and it was therein provided that: "The purpose of this

law is to impose a tax of one and one-half per cent. on the gross receipts of every insurance company coming within the description herein above given, whether such premium receipts be in cash or in the shape of notes or other evidences of credit." At that time insurance companies doing business in this state were not authorized to write annuity contracts and were not so authorized until 1921, although the tax rate had been increased in the meantime. In that year, the legislature enacted act 493 and in § 1 provided: "Corporations may be formed or enter this state to effect insurance for the following purposes: 3. Life Insurance—Upon the lives or health of persons and every assurance pertaining thereto, and to grant, purchase or dispose of annuities and endowments." This appears to me to be a very strong indication that the legislature did not consider annuity contracts as being life insurance, else why, after authorizing life and health insurance of all kinds, was it deemed necessary to add the words "and to grant, purchase and dispose of annuities and endowments." If the legislature had thought annuity payments or premiums were taxable as insurance premiums, it would have been a very simple thing to have added that they were taxable as such. It did not do so and the taxing statute was not amended at that or any succeeding session of the legislature to include them. The only amendments to the taxing statute that have ever been made since 1913 are to increase the rate. In 1935, the Commissioner of Insurance prepared and had introduced a bill which, among other provisions, contained one that would have specifically taxed annuity receipts, but it was defeated. In the 1938 special session, the legislature, among other amendments to the insurance laws, amended § 7965 of Pope's Digest, the section that levies a tax of 2½ per cent. on the "gross premium receipts" of life, health and accident insurance companies, but it did not in terms impose such tax on annuity receipts. No insurance commissioner of this state has ever demanded of appellee the payment of the tax demanded in this action, for the reason that no insurance commissioner ever considered that the present statute authorized him to do so, for the reason that an-

nuity receipts were not life insurance premiums within the meaning of the taxing statute. No doubt they so considered the matter because of two decisions, one by the Supreme Court of Pennsylvania in 1916 in the case of *Commonwealth* v. *Metropolitan Life Ins. Co.*, 254 Pa. 510, 98 Atl. 1072, and the other in 1920, in New York, in the case of *People ex rel. Metropolitan Life Ins. Co.* v. *Knapp*, 193 App. Div. 413, 184 N. Y. S. 345, affirmed 231 N. Y. 630, 132 N. E. 345. In the Pennsylvania case, the statute of that state imposed a tax on "the entire amount of premiums of every character and description," and in disposing of the case pointed out the difference between "the ordinary insurance contract and the granting of an annuity," and stated, in line with what I have pointed out above, that: "It is significant that neither the Legislature of Pennsylvania or New York appears to have supposed that the power to make every insurance appertaining to or connected with the lives of individuals, conferred authority also to grant or purchase annuities. This authority is expressly added in each state." In denying the right of the Commonwealth to collect the tax on annuity receipts, the court said: "For these reasons in our opinion the act of June 1, 1911 (P. L. 607), under which the commonwealth here claims, and which imposes tax only upon premiums received by every insurance company, does not impose the tax upon the consideration paid for the granting of annuities. We therefore have reached the following conclusions:

". . . The defendant company under the act of June 1, 1911 (P. L. 607), is not liable to tax upon the consideration money received by it for the granting of its annuities.

"The defendant company has fully paid the tax imposed by the act of June 1, 1911, upon the gross premiums received by it during the years 1911 and 1912, and is not now indebted to the commonwealth, in either of the cases stated in the caption hereto."

The New York court, in the case cited, reached the same conclusion. The New York statute imposed the tax on "the gross amount of premiums received during the

preceding calendar year." (193 App. Div. 413, 184 N. Y. S. 346). I can see no distinction between a tax on "the entire amount of premiums of every character and description," as in Pennsylvania, "the gross amount of premiums received," as in New York, and the "gross premium receipts," as in the Arkansas statute. All mean the same thing. Other and more recent cases to the same effect are *State of North Dakota* v. *Equitoble Life Assurance Society of the U. S.,* 68 N. Dak. 641, 282 N. W. 411; *State ex rel. Equitable Life Assurance Society* v. *Hamm, Ins. Comm.,* 88 Pac. 2d (Wyo.) 484, decided March 21, 1939; *Daniel* v. *Life Ins. Co. of Virginia,* (Tex. Civ. App.) 102 S. W. 2d 256.

It is my further opinion that before a tax can be levied on annuity receipts, the statute would have to be amended so as to clearly express the intention of the legislature so to do. I have no doubt that it could do so, but my insistence is that it has not done so. In the recent so-called "use tax" case, *Mann* v. *McCarroll, Commissioner of Revenues, ante* p. 628, 130 S. W. 2d 721, we said: "The question raised here is whether a use tax has been levied or imposed upon the property. The law is, as we understand it, that the imposition or levying of a tax shall be direct and specific, and if there is any doubt about the fact of the levy, such doubt must be resolved in favor of the taxpayer." Citing cases. It must be conceded that the language of the statute is not "direct and specific." No Insurance Commissioner has ever so considered it or attempted to collect the tax during the eighteen years since insurance companies were authorized to issue annuity contracts. Although the legislature's attention has been called to the failure of the statute to impose such tax, it has failed to amend the statute as to enable the Commissioner to collect it, and until it does, I am unwilling for this court to legislate for it.

I, therefore, concur in the holding of the majority that this action is barred, but dissent from the holding that the present statute authorizes the Commissioner to collect the tax on annuity receipts in the future.

Mr. Justice BAKER concurs in this opinion.