(Nos. 13673-13674.—Reversed and remanded.)

THE PEOPLE *ex rel.* Mary E. Meehan, Plaintiff in Error, *vs.* OSCAR G. FOREMAN *et al.* Defendants in Error.— THE PEOPLE *ex rel.* Elizabeth Farrell, Plaintiff in Error, *vs.* OSCAR G. FOREMAN *et al.* Defendants in Error.

*Opinion filed February 15, 1921.*

1. PENSIONS—*act of 1915 providing police pensions is a continuation of act of 1887.* The act of 1915 providing for a police pension fund is an independent act, but it relates to the same subject as the act of 1887 and is a practical continuation of that act as amended and preserves all rights acquired under the earlier statute.

2. SAME—*amendment of 1913 to the Police Pension Fund act of 1887 did not limit class previously entitled to pensions.* The Police Pension Fund act of 1887 included every member of the police force who was duly appointed and sworn, regardless of the nature of the service; and the amendment of 1913, by the use of the single word "policeman," did not limit the class who were previously entitled to the benefits of the act.

3. SAME—*widow of police operator is entitled to a pension independently of the act of 1915.* The right of a widow of a police operator to a pension exists under the act of 1887 and its amendments and does not depend for its existence upon the act of 1915, which defines the word "policeman" so as to include police operators, as the purpose of such definition is merely to make clear what persons are included in the term "policeman," as used in the act of 1915 and the prior acts, and not to create any new class of pensioners.

4. STATUTES—*a statute will not be given a retrospective effect unless so intended.* Retroactive legislation changing rights is not favored, and a court will never give to a law such an operation, although within the legislative power, unless the will of the legislature is declared in terms so plain and positive as to admit of no doubt that such was the intention.

WRITS OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on appeals from the Circuit Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding.

ALANSON C. NOBLE, and FRANK B. MURRAY, for plaintiffs in error.

SAMUEL A. ETTELSON, Corporation Counsel, (JAMES
W. BREEN, of counsel,) for defendants in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion
of the court:

The plaintiffs in error, Mary E. Meehan, widow of Ed-
ward M. Meehan, and Elizabeth Farrell, widow of James
J. Farrell, filed petitions in the name of the People in the
circuit court of Cook county for writs of *mandamus* com-
manding the board of trustees of the police pension fund
of the city of Chicago to grant them pensions as widows
of their deceased husbands, who had been members of the
police force of the city as police operators. The answers
denied that police operators were included in the acts pro-
viding for pensions, and the suits were tried by the court
without a jury upon agreed statements of facts and the peti-
tions were dismissed. Appeals were taken to the Appellate
Court for the First District, where the judgments were af-
firmed, and this court allowed writs of *certiorari* to bring
the records here for review. The facts and questions of
law being the same the appeals were consolidated for hear-
ing and decision, and the single question involved is whether
members of the police department of the city of Chicago
designated as police operators are within the terms of the
acts providing for pensions after a certain term of service.

The facts as stipulated which are material to be consid-
ered are as follows: On June 30, 1897, Edward M. Mee-
han was sworn in as a member of the police force of the
city of Chicago as police operator and took the prescribed
oath as such, which oath was the same as that taken by
the members of the force designated as policemen. On
July 24, 1897, James J. Farrell was sworn in as a mem-
ber of the police force in like manner and took the same
oath. Meehan and Farrell continued in the department of
the police force known as police operators and performed

the duties assigned and required of that department continuously until their respective deaths. On March 27, 1913, they each took the oath prescribed for members of the police force designated as policemen, which oath was the same as that prescribed for police operators, the only difference being the word "policeman" instead of "police operator." There was no change in the duties required of either of them or of the members of the police force designated as police operators, and they each continued to render the same services as members of the police force until their respective deaths. Farrell died on October 31, 1913, leaving Elizabeth Farrell his widow, who remains unmarried, and at the time of his death he was a member of the police force of the city. Meehan died on October 28, 1914, leaving Mary E. Meehan his widow, who remains unmarried, and at the time of his death he was a member of the police force of the city. Meehan and Farrell had paid in and contributed to the police pension fund the full amounts required of them by law to pay for and into said fund and were in good standing in said fund at the time of their respective deaths, and due proofs of death and demand for the pensions were made.

The circuit court held propositions of law numbered 2 and 4 submitted by the relators as the law, viz.:

2. "That under said acts police operators who were members of the police force were entitled to the benefits of said pension."

4. "That under the Police Pension act of A. D. 1913 every member of the police force who was entitled to the benefits of the police pension fund under the former acts became entitled to the benefits of the police pension provided for under said act of 1913."

The court, however, refused a number of propositions of law stating that every member of the police department of the city of Chicago was entitled to the benefits of the police pension upon qualifications as to dues and time of

service, or that under the acts of the legislature all members of the police force or department were policemen within the meaning of said acts, or that the widows of police operators were entitled to pensions although their husbands served on the police force as police operators, because not within the terms of said acts.

The solution of the question presented whether members of the police force performing services in the police department of the city as police operators were included in the class entitled to pensions when Meehan and Farrell died depends upon the construction to be given to the acts of the legislature.

In 1887 the legislature passed the act providing for the setting apart, formation and disbursement of a police pension fund in each city, village or incorporated town having a population of 50,000 inhabitants or more. (Laws of 1887, p. 122.) Section 3 of the act provided that whenever any person, at the time of the taking effect of the act or thereafter, should have been duly appointed and sworn and have served for the period of twenty years or more upon the regularly constituted police force of any city, village or town subject to the provisions of the act, after becoming fifty years of age and his service having ceased, he should be paid a pension. This section included every person in a regularly constituted police force, regardless of position. Section 4 provided that whenever any person, while serving as a policeman, should become physically disabled while in and in consequence of the performance of his duty as such policeman, he should be paid a pension upon retirement. Section 6 provided that whenever any member of the police force should lose his life while in the performance of his duty or receive injuries from which he should thereafter die, leaving a widow or child or children under the age of sixteen years, a pension should be paid to his widow, or if no widow, then to the child or children until they should be sixteen years of age. Sec-

tion 6, like section 3, included every member of the police force, and it is evident that section 4 was intended, in the use of the word "policeman," to have the same meaning. In these three sections of that act the terms "policeman," and "member of the police force," or "of the regularly constituted police force," were used indiscriminately as applying to the same persons.

The act of 1887 was amended from time to time, and in 1913 the first ten sections of the act were amended in particulars relating to the question here involved. (Laws of 1913, p. 174.) In sections 3, 4 and 6 as then amended the word "policemen" was used as designating the persons entitled to pensions. Section 3 provided that whenever any person should have been or should thereafter be appointed and sworn or designated by law either as a probationary or regular policeman, and should have served for a period of twenty years or more in the police department, he should be entitled to a pension after his service had ceased. Section 6 provided that whenever any policeman should die after ten years' service and while still in the service, leaving a widow or child or children under the age of sixteen years, a pension should be paid to such widow, or if there should be no widow, then to the child or children until they should be sixteen years of age. This was the act in force when Meehan and Farrell died, and its apparent purpose was to include probationary policemen and widows and children. There was no language indicating an intention to limit or change the class except to include probationary members.

In 1915 an act was passed which declared that it was intended to supersede the act of 1887 as subsequently amended but not to affect pensions granted under it or the amount. The declaration of the act was that pensioners were to receive no further payment under the act of 1887 but in lieu thereof were to be entitled to the benefits of the act of 1915. (Laws of 1915, p. 304.) While it

was an independent act, it related to the same subject, was a practical continuation of the act of 1887 as amended and preserved all rights acquired under it. Section 3, using language identical with that used in section 3 of the amendment of 1913, provided that whenever any person should have been or should thereafter be appointed and sworn as a probationary or regular policeman and should have served for twenty years or more in the police force of the city he should be entitled to a pension, and in case of his death his widow, or children under sixteen years of age, should be paid the pension provided for him. Sections 4 and 5 used the same language in designating the class, by providing a pension for any person appointed and sworn as a regular or probationary policeman. Having used the same language as the act of 1913 in designating the class of persons entitled to pensions, section 7 gave a construction to the word "policeman" as follows: "Wheresoever the word 'policeman,' as used in this act appears, the same shall be interpreted and construed to mean the following: Any person who has been appointed and sworn or designated by law as a policeman, prior to the taking effect of this act, and has served in a regularly constituted police department as a policeman, or police patrol driver and police operator and a member of the police force thereof, and contributed to the police pension fund for such time as he has been in the services of such police department as a policeman, or police patrol driver and police operator."

It is quite clear, as we have already seen, that the act of 1887 included every member of the police force by giving a right to a pension to every person duly appointed and sworn and who should serve for the specified term upon the regularly constituted police force, regardless of the nature of the service. A police force consists of various classes, such as chief, captains, superintendents, inspectors, detectives, lieutenants, sergeants, patrolmen and roundsmen, all of whom render service in the police de-

partment as members of the police force. The language of the act was changed by the amendment of 1913 and the single word "policeman" was used, but it would not be supposed that there was an intention to exclude from the benefits of the act those who were previously entitled to its benefits and to restrict the class entitled to pensions to regular or probationary patrolmen unless such intention was clearly manifested. An intention to so limit the class does not appear, either in terms or inferentially, from anything contained in the amendment.

The act of 1915, which superseded the act 1887 with its amendments, defined the meaning of the word "policeman" so as to include police operators, and it is insisted that to give that definition to the word as previously used would make the act of 1915 retrospective and confer rights not previously existing. Retroactive legislation changing rights is not favored, and a court will never give to a law such an operation unless compelled to do so by language so clear and explicit as to admit of no other interpretation. No statute will be allowed a retrospective operation, although within the legislative power, unless the will of the legislature is declared in terms so plain and positive as to admit of no doubt that such was the intention. (*Garrett* v. *Wiggins*, 1 Scam. 335; *Robinson* v. *Rowan*, 2 id. 499; *Bruce* v. *Schuyler*, 4 Gilm. 221; *People* v. *Deutsche Gemeinde*, 249 Ill. 132.) There is no such declaration of intention in the act of 1915, and it cannot be given a retroactive effect so as to include persons not previously entitled to pensions. If, however, the purpose of the act of 1915 was to define what members of the police force were included in the term "policeman" as used in the various acts relating to the same subject and giving continuous rights, then the relators were entitled to pensions, because their husbands had been members of the police force and rendered service as police operators. The construction given to the word "policeman" was not and did not purport to

be the creation of any new right, but only a settlement of the question what the legislature meant to include in the term "policeman." If that is not so, members of the police force who had served as police operators for a long term of years would have no benefit from the police pension fund until subsequent service for the statutory period, no matter how meritorious the service had been. The more reasonable conclusion appears to be that the legislative intention was to give a definition or interpretation of the word "policeman" as used in the series of acts constituting the legislation on the same subject. All the facts entitling the relators to pensions were stipulated, including the contributions of their husbands to the pension fund, and under the law they were entitled to pensions.

The judgments of the Appellate Court and circuit court are reversed and the causes are remanded to the circuit court.

*Reversed and remanded.*