O'NEAL v. STATE.

Crim. 4077.

Opinion delivered January 17, 1938.

E. W. Brockman, for appellant.

Jack Holt, Attorney General, and John P. Streepey, Assistant, for appellee.

BAKER, J. The appellant was indicted by the grand jury of Drew county, Arkansas. The indictment, omitting the caption is as follows:

"The grand jury of Drew county, in the name and by the authority of the state of Arkansas, accuse Ray O'Neal of the crime of grand larceny, committed as follows, to-wit:

"That said Ray O'Neal, in the county and state aforesaid, on or about the fourth of July, 1936, did then and there one hog, the property of Earl Hoover, who lives in Lincoln county, Arkansas, did unlawfully and feloniously take, steal and carry away and transport same into Drew county, Arkansas, and keep and conceal same in Drew county, Arkansas, contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Arkansas."

A demurrer was interposed to this indictment, overruled and exceptions saved. Thereafter the court permitted the prosecuting attorney to amend the indictment by inserting the words "in Lincoln county, Arkansas," immediately following the date alleged in the indictment. Objections were duly made and being overruled, exceptions were saved by defendant. At the trial, conviction was had and defendant was sentenced to the penitentiary for one year. It is from this judgment and sentence that the appeal has been prayed.

The appellant charges several errors as a reason for reversal of the judgment. The matters relied upon by him are substantially to the following effect. First: The judgment is not supported by sufficient evidence. Second: That the court erred in not permitting the appellant to exercise more than eight challenges. Third: That the court erred in permitting the prosecuting attorney to ask certain witnesses for the state and permitting them to answer questions with reference to alleged conditions found or discovered by them, at the home of Will Blair immediately after the alleged commission of the offense, with reference to signs, wagon tracks, horse and mule tracks, a potato house, and the condition of

same, etc. Fourth: That the court erred in giving certain instructions over the objections of the defendant.

These matters will be disposed of in the manner in which they arose without regard to the order stated, after a discussion of the indictment and objections made thereto.

As above stated the indictment was amended under order of the court, by permitting the prosecuting attorney to insert after the date, the words, "in Lincoln County, Arkansas," the effect of which was to charge the place where the hog was first stolen. It is now urged that this change, or amendment, by the prosecuting attorney was one in which there was inserted a certain material fact necessary to charge correctly and legally an offense against the laws of the state. That is to say, that such amendment was not merely a matter of form made necessary for clarity of expression rather than a charging of an essential part of the offense.

It must be kept in mind that the grand jury intended to charge an offense as having been committed in Drew county and that it was this offense, alleged to have been committed in Drew county under which the appellant was tried and convicted. The indictment, did in fact, charge a larceny of the hog and that it was transported into Drew county, and by the use of that language there was the necessary implication that the first or original larceny occurred at some other place and by transportation into Drew county a new larceny occurred therein for which the defendant was prosecuted under the indictment. The proceedings were had under § 3696 of Pope's Digest. The effect of that statute and indictment thereunder have been considered by this court on several occasions. One of the latest cases arising thereunder is the case of the *State* v. *Alexander and Moore,* 118 Ark. 357, 176 S. W. 315. The language in the indictment in the cited case differs from that in the instant case in that there was a direct charge therein that the property was stolen in Monroe county and was transported from Monroe county into the southern district of Woodruff county.

An earlier case is that of *Wilson* v. *State*, 97 Ark. 412, 134 S. W. 623. There was a reversal in the Wilson case for the reason that it was not shown that Wilson had any connection with the original larceny of the goods stolen in Memphis, Tennessee. Not being connected with the crime of the original theft and having merely received stolen goods, his transportation, or bringing them into Craighead county did not constitute an offense punishable under the above mentioned section.

We think it is clear, both from the statute and the construction heretofore given to it in the cases cited above, that as the indictment charged an offense before amendment, because it did in fact charge him with having committed the original larceny and after having stolen the property, he transported the same into Drew county. One who steals property and transports it into or through any of the counties of the state commits a new larceny in each county into which, or through which, he transports such property. *Baker* v. *State*, 58 Ark. 513, 25 S. W. 603; *State* v. *Johnson*, 38 Ark. 568.

This court announced in very plain language, the following rule: "However, it would not have made any difference had they been stolen in Sebastian county. The reason is crime charged was committed by the movement of stolen property from one county to another, and the indictment may be had in any county in which the stolen property may be carried." *Cooper* v. *State,* 186 Ark. 26, 52 S. W. 2d 171.

It would appear even to the casual reader that the allegation of the original theft as having occurred in Lincoln county is not essential, but is informative as it alleges the place of the original theft. The prosecution followed, not because of the original theft, but for the reason of the transportation into Drew county where he was indicted.

That new asportation in Drew county was the gist of the offense charged. The propriety of this indictment appears from such facts as we may hereinafter state.

If anyone should deem it necessary to charge the place of the original theft as important, it must be so

regarded by reason of the fact that it was formerly necessary, ordinarily, to charge the offense by indictment, alleging with due particularity required by the statutes, the particular circumstances of the offense charged. Section 3834, Pope's Digest. That degree of particularity is not now required. See Initiated Act No. 3, Acts of 1937, pp. 1384, 1395. Section 3851, Pope's Digest. Amendments to indictments are authorized by said act No. 3; Pope's Digest, § 3853. The case might have been prosecuted by information filed as provided for by amendment No. 21, to the Constition. See Pope's Digest, p. 194. If there was a defect it was not prejudicial. Such condition is provided for under the provisions in § 3836 of Pope's Digest, wherein it is provided that no indictment is insufficient, nor can the trial, judgment, or other proceedings thereon, be affected by any defect which does not tend to the prejudice of the substantial rights of the defendant on the merits. The amendment or statement inserted in the indictment may be deemed as fully provided for under initiated act No. 3 of 1936.

It is urged, however, that the words inserted by amendment were not merely formal matters, but were of the essence of the crime charged. We do not think so. It was not an effort to charge the venue. It was merely an informative declaration, which under proper order of the court might have been set forth in a bill of particulars under said initiated act No. 3, adopted in 1936. See § 3853, Pope's Digest.

The proof tends to show that the appellant, who lives near the line between Drew and Lincoln counties was driving along the roadway, between the home of his father-in-law in Lincoln county and his own home in Drew county, passed near the home of one Hoover, who testified that O'Neal had one of his hogs in his possession, and that he and his wife followed O'Neal, stopped him on the highway and found that he had a hog in his wagon, covered with a chicken coop, which was also covered with a quilt so as to conceal both the coop and the hog. Hoover and his wife examined the hog, iden-

tified it, but stated that its ear-marks had just been changed, and the tail had just been freshly cropped. That the ears and tail were still bloody, and that part of the old marks, which had completely healed could still be seen. This was on Saturday night. Several visitors went to O'Neal's home and saw several hogs, including one of which he claimed he had hauled to his home and delivered there Saturday night. On Monday the hog which Hoover claimed, according to his testimony, returned to his home. Some witnesses went to the home of Blair in Lincoln county, father-in-law of O'Neal, and said they found there signs, which they described, of a hog having been kept in a potato house. But the potato house had recently been cleaned out. There were also signs showing that a wagon had been near the front of the home, and had been driven to a point near the potato house and then down the road which passes Hoover's home near which Hoover had overtaken O'Neal and examined the hog which he had in the wagon. A significant fact about these wagon tracks and the tracks of the team as testified to by witnesses and also by Hoover is that the team was composed of one mule and one horse. The identification by Hoover and his wife was positive. Notwithstanding the denial by O'Neal, or any explanation made by him, the above stated matters made issues for the determination by the jury. Not only was the testimony substantial, but if believed, established the guilt of appellant. But it is urged that the court erred in admitting a certain portion of this testimony. This is that part relating to the condition found at Blair's home, and it is urged that these witnesses should not have been permitted to testify as to the conditions found there, and the information they obtained by their examination of the premises at Blair's home because such information was gathered, or obtained, in the absence of the defendant.

No statute of the state or decision of this or any other court has been cited and found to be in point as sustaining appellant's contention in that regard. We think it would readily be conceded by any attorney that

had these witnesses attempted to detail any conversation had with anyone at Blair's home, such testimony would have been prejudicial. But that was not the effect of their testimony. They detailed no statement made by anyone, but gave evidence only of what they observed. The evidence tended to show that a wagon with a horse and mule team, such as that driven by O'Neal, had been at Blair's home and had been driven near the potato house and along the road passing Hoover's home.

It must be conceded that there was possibly other teams in that community consisting of a horse and mule, and that such team may have been driven over the same roads, or highways, that O'Neal was found upon Saturday night. There is no proof of such fact. The jury had a right to consider such testimony for whatever they found it was worth, together with other facts and circumstances presented. The evidence was not hearsay or otherwise objectionable for any of the reasons urged by appellant.

Appellant urges that the court's ruling in regard to the exercise of peremptory challenges on the part of the appellant was error. The effect of the court's ruling was to allow the appellant only eight challenges as provided by act No. 3, adopted at the election of 1936, § 3998, Pope's Digest. Prior to that time the defendant in felony cases had been allowed twenty peremptory challenges, and this law was in effect at the time of the commission of the crime as alleged in the indictment. It is, therefore, the contention of the appellant that he was denied a substantial right, which he possessed on the date it was alleged the offense was committed. This contention is not sound. Unless there is an express provision therefor, a party to a legal proceeding has no right to insist that a mere rule of procedure may not be changed. Initiated act No. 3 was one that affected the remedy only and the appellant had no vested right in any remedy that may have been in existence at the time he is alleged to have committed the offense. It is urged that the ruling of the court was such as to make initiated

act No. 3 retroactive in effect. That contention is likewise unsound. It did not, and could not, apply to any trial or proceeding in court already had. It did attempt to regulate procedure that would thereafter take place and this trial was had long after initiated act No. 3 was in full force and effect. No vested right was interfered with by giving full effect to the statute when there is no reservation therein, or anything therein, to indicate that it should not become effective upon adoption. *Foster* v. *Graves,* 168 Ark. 1033, 275 S. W. 653; *State ex rel. Attorney General* v. *Anderson-Tully Co.,* 186 Ark. 170, 53 S. W. 2d 17; *Van Hook* v. *McNeil Monument Co.,* 107 Ark. 292, 155 S. W. 110; *Green* v. *Abraham,* 43 Ark. 420.

Certain instructions were objected to by appellant, the principal objection being to the effect that there was no evidence that defendant kept and concealed property of Earl Hoover in Drew county. This is the objection urged to instruction No. 3 and also No. 5, both of which are argued by appellant as being erroneous on account thereof. It is only necessary to call attention to the fact that Hoover testified, as did his wife, that at the time they overtook O'Neal at night he had the hog, which he is alleged to have stolen, under a coop in his wagon, and the coop, covered with an old quilt. If this testimony is to be believed, the purpose of the quilt must have been to conceal the coop with its contents, as the indictment charged. As this occurred on the night of the fourth of July there was perhaps no other reason to cover the coop except concealment.

We have considered all the instructions and there appears to be no prejudicial matter in any of them. We think they submitted fairly to the jury the questions and issues that arose under the evidence in the case. While the appellant has vigorously charged that the instructions were prejudicial and contradictory, we do not deem that a serious challenge for the reason that no effort has been made to point out such inconsistencies, contradictions or prejudicial matters.

No error appearing, the judgment is affirmed.