ARKANSAS-LOUISIANA GAS COMPANY *v.* HARDIN,
COMMISSIONER OF REVENUES.

4-7196                                    176 S. W. 2d 903

Opinion delivered January 10, 1944.

594

*H. C. Walker, Jr.,* and *Moore, Burrow, Chowning & Hall,* for appellant.

*Leffel Gentry,* for appellee.

ROBINS, J.   In the complaint filed in the lower court by appellee, as Commissioner of Revenues for the State of Arkansas, against appellant, Arkansas-Louisiana Gas Company, it was alleged that appellant had for many years been engaged in the transportation and sale of natural gas in the state of Arkansas and had failed and refused to collect the two per cent. sales tax levied under the provisions of Act 233 of the Acts of 1935 and Act 154 of 1937, as amended, and the prayer of the complaint was for an accounting from the records of appellant since the effective date of Act 233 of the Acts of 1935, and for judgment for the amount of taxes found to be due by appellant under the provisions of said acts.

Appellant in its answer admitted that it was, during the period mentioned in the complaint, engaged in transportation and sale of natural gas in the state of Arkansas, but denied that it was required by the two laws referred to in the complaint to collect a tax of two per cent. on the gross proceeds derived from all of its sales. Appellant set forth in its answer that during the period involved it had made sales to certain industrial customers, two per cent. of the total sales to said customers amounting to $97,125.09; that the gas sold to these customers was purchased and produced by appellant in the state of Louisiana, and was transported through appellant's pipe line ''in a continuous stream from Louisiana. into Arkansas, and was delivered to each such customer at the customer's plant located adjacent or near to the main pipe line in large quantities for use in industrial

operations''; that the gas was not worked or treated prior to delivery by appellant in any instance, the only reduction in pressure incident to its delivery being such as was necessary in the gas being metered to the customer; that the gas sold to said industrial customers was in each instance sold and delivered under the terms of a special written contract entered into in the state of Louisiana, and that the transportation and sale of this gas constituted a transaction of interstate commerce, and as such was not taxable under the laws referred to.

As a further defense appellant set forth in its answer that during the entire period in which it was alleged by appellee that the tax liability had accrued, appellant had, in accordance with the provisions of the laws of Arkansas, filed each month with the Commissioner of Revenues, on forms furnished by said commissioner, a return showing the sales of gas to all customers, including the said industrial customers, and showing the gross proceeds of said sales, and that with each such return appellant remitted to the Commissioner of Revenues the amount of money shown by said return to be due the state of Arkansas as taxes; that each said return showed that no sales tax was being collected or paid on the proceeds of gas sold to said industrial customers; that full disclosure as to such sales was thus made in said returns and no concealment or fraud was practiced by appellant in the preparation or filing of the returns; that the Commissioner of Revenues has never in any instance notified appellant of a hearing to be held upon any return for the purpose of correcting it, and has never notified appellant by mail of any greater or additional tax being computed by the Commissioner of Revenues; and that, under the provisions of § 13899 of Pope's Digest of the statutes of Arkansas, appellee was barred from recovering the tax alleged to be due on the proceeds of appellant's sales to said industrial customers.

On the trial of the case no evidence was introduced by either party, but there was a stipulation as to the facts, which, after setting forth the method under which the gas was sold and delivered to the industrial customers

596

whose purchases are involved in this suit, contained this recital:

"11. During and for the period July 1, 1935, to June 30, 1941, Arkansas-Louisiana Gas Company on or about the 15th day of each month filed with the Commissioner of Revenues of the state of Arkansas a return, on forms furnished by the commissioner, of its sales of gas for the preceding month to all customers, including its aforesaid pipeline industrial customers mentioned and described in paragraphs 2 to 8, inclusive, hereof, each return showing the gross proceeds of said sales; and with each return the company remitted to the commissioner the amount of money stated therein to be due the state as tax on the proceeds thereof under the aforesaid Acts of 1935 and 1937 (as amended). Arkansas-Louisiana Gas Company set forth in each of said monthly returns the sales upon which taxes were paid and those upon which taxes were not paid, and each return showed that no sales tax was paid on the proceeds of the gas sold to the said pipeline industrial customers, it being stated in each said monthly return that such sales were regarded as having been in interstate commerce and as not subject to sales tax. Copies of the returns filed with the Commissioner of Revenues under dates of August 15, 1938, and December 15, 1939, are hereto attached as Exhibits 2 and 3, respectively, and made a part hereof. All returns filed during the aforesaid period were made in similar form and manner and the returns, together with the remittance accompanying each return, were accepted by the Commissioner of Revenues without correction.

"12. The Commissioner of Revenues never in the instance of any of the monthly returns filed by Arkansas-Louisiana Gas Company during the period mentioned in paragraph numbered 11 hereof notified the said company of any hearing to be held by him upon any such return for the purpose of correcting it, never notified the company that any of said returns had been corrected, and never notified the company that any greater or additional tax than that returned and paid by the company had been computed by him upon any of the said returns.

However, the Commissioner of Revenues by letters, copies of which are exhibits to this stipulation, advised the company of his contention that the sales, claimed by the company in its monthly returns to be exempt on account of being sales in interstate commerce, were subject to the tax; copies of the letters of the Commissioner of Revenues, as well as the letters of the company in reply, are attached to this stipulation as Exhibits 4 to 11, inclusive.''

It was also recited in this stipulation that the agregate amount due the state of Arkansas as tax upon the sales to these industrial customers, provided such sales were subject to the tax imposed by the above mentioned laws, is $97,125.09. By a supplemental stipulation it was agreed that, of this sum, $50,845.73 had been collected by appellant from certain of the industrial customers referred to in the stipulation, and that these customers had paid sales tax aggregating this amount upon the agreement and condition that appellant would withhold payment of same to the revenue commissioner ''until the question of tax liability was finally determined by the courts.''

By decree of the lower court it was adjudged that appellee should recover from appellant the sum of $97,-125.09, to reverse which decree appellant prosecutes this appeal.

## I.

It is first urged by appellant that the sales of gas involved in this action constitute interstate commerce and were therefore not subject to the Arkansas sales tax. It is conceded, however, by appellant that the facts relative to the sales involved herein are substantially the same as those upon which this court based its opinion in the case of *Department of Public Utilities* v. *Arkansas-Louisiana Gas Company,* 194 Ark. 354, 108 S. W. 2d 586, (affirmed by United States Supreme Court, 304 U. S. 61) and it appears from the record that the transactions involved in the instant case are for all practical purposes identical with those involved in the case of *Southern Kraft Corporation* v. *Hardin, Commissioner,* 205 Ark.

512, 169 S. W. 2d 637. In the latter case this court specifically held that these sales did not constitute interstate commerce and were subject to the payment of the two per cent. sales tax levied by the state of Arkansas. In the opinion of the court in that case the respective contentions of both parties, which are the same as those here urged, as well as the authorities bearing on the question, were thoroughly discussed and we deem it unnecessary to review the same in this opinion. We adhere to the conclusions announced by the court in the opinion in the Southern Kraft Corporation case, *supra*. The sales made by appellant to its industrial customers, the taxes on which are the subject-matter of this action, were not transactions in interstate commerce, and were such sales as were subject to the payment of the two per cent. Arkansas sales tax.

. II.

It is next argued by appellant that appellee was precluded from bringing and maintaining this action by reason of the provisions of § 13899 of Pope's Digest of the laws of Arkansas as follows: ''After the assessment and full payment of any general property, privilege or excise tax, no proceedings shall hereafter be brought or maintained for the reassessment of the value on which such tax is based, except for actual fraud of the taxpayer, provided that failure to assess taxes as required by law shall be *prima facie* evidence of fraud.''

In the case of *Wiseman* v. *Phillips*, 191 Ark. 63, 84 S. W. 2d 91, and in the case of *State* v. *New York Life Insurance Company*, 198 Ark. 820, 131 S. W. 2d 639, it was held by this court that § 13899, *supra*, applies to suits by the state to collect delinquent privilege and excise taxes; and in the case of *McCarroll, Commissioner of Revenues, v. Hollis & Company*, 201 Ark. 931, 148 S. W. 2d 167, we held that the provisions of this section (13899 of Pope's Digest) apply to suits for the collection of delinquent sales tax. In the last mentioned case it appeared that Hollis & Company had made monthly returns to the revenue commissioner showing all its sales and showing that no sales tax was being collected or paid by it on

certain sales claimed by it to be transactions in interstate commerce, and it was there held that § 13899, *supra,* applies to collection of delinquent sales taxes, and that under the facts shown the taxpayer was entitled to the benefit of the provisions of said section.

A simple and effective procedure for the collection of sales taxes such as are involved herein is afforded by the provisions of § 14077 of Pope's Digest as follows: "Any retailer who shall neglect, fail or refuse to collect the tax herein provided upon any, every and all retail sales made by him or his agents or employees shall pay the same himself, which said amount may be collected by distraint warrant as provided in this act. Provided any retailer of a service of a continuous nature required by law or regulation of a state agency having jurisdiction shall have the right to discontinue service upon refusal of consumer to pay the sales tax thereon and shall report such refusal to the commissioner, and the commissioner shall assess the tax due directly against the consumer and shall proceed to collect such tax due by direct distraint upon the property of the consumer, or otherwise."

This section is § 10 of Act 154, approved February 26, 1937. Section 10 of Act 233, approved March 28, 1935, is identical except that it does not contain the last sentence, beginning, "Provided any retailer," etc.

Another procedure which the revenue commissioner might have followed to collect these taxes is thus provided by § 14079 of Pope's Digest: "If the commissioner has reason to believe, and does believe, that any return is incorrect, after notice to the person making the return and a hearing, he shall correct such return according to his best judgment and information, which return so corrected by the commissioner shall be *prima facie* correct. If the tax or amount found to be due by the commissioner is greater than the amount of tax or amount due under the return as filed, the person making such return shall pay the additional tax or amount as computed by the commissioner within ten days after notice of the amount of such additional tax or amount is mailed to such per-

son. If the payment is not made within such ten days a penalty of ten per centum and interest at the rate of one per centum for each month or fraction of a month calculated from the date of the mailing of such notice, shall be added to the amount of such additional tax or amount due by said person.''

This section was § 12 of Act No. 154, approved February 26, 1937. It also appears as § 12 of Act 233, approved March 28, 1935, the original sales tax law.

The stipulation in this case shows that on December 17, 1935, the Commissioner of Revenues in a letter to appellant called attention to the fact that appellant had taken credit for items described as ''interstate sales'' amounting to $108,440.73 and demanded that remittance be sent to cover the sales tax on these items. In reply to this appellant on December 23, 1935, wrote the Commissioner of Revenues a letter setting forth that the purchasers in these sales claimed same were interstate and therefore exempt from sales tax. Appellant in this letter also made this suggestion: ''If the department should desire to claim the pipeline sales are subject to the tax it is suggested that the department itself sue such purchasers and not undertake to involve the Arkansas-Louisiana Gas Company.'' In another letter written by appellant to the Commissioner of Revenues on March 28, 1936, appellant questioned its authority to discontinue gas service for failure to pay a tax due to the state for which appellant was merely a collecting agent, and again contended that the state itself should enforce the liability against the consumers. Other letters were exchanged in which the Commissioner of Revenues and appellant both reiterated their previously expressed views as to the liability and as to who should enforce collection, the last letter written by appellant being dated December 3, 1936, and the last letter written by the revenue commissioner on the subject being dated December 8, 1936.

This situation is disclosed by the stipulation: The taxpayer made returns which gave to the revenue commissioner correct information as to the sales involved herein, but denied liability therefor on the ground that

these sales were not taxable. The revenue commissioner did not exercise his power to collect this tax directly from the consumer, and did not exercise his power to surcharge the returns of appellant and enforce payment of the delinquent amount by distraint. He made no effort to collect the tax other than to protest by letters, the last of which was written in December, 1936, until this suit was filed on April 4, 1942. There is no intimation of collusion between appellant and any collecting official of the state.

It is held in many states that where the statute prescribes a remedy for the collection of delinquent taxes, such remedy is exclusive and a suit for the collection of such taxes cannot be maintained. 61 C. J. 1053. Cooley on Taxation (4th Ed.), vol. 3, § 1330. This exact question, so far as we have been able to find, has not been directly passed on by this court, and no contention of this kind is asserted here, the only defense urged by appellant (other than that the sales were transactions in interstate commerce) being that the action of the state is barred by the above quoted provisions of the "back tax statute" (Pope's Digest, § 13899).

Appellee contends that these three factors must concur to put in operation the bar of the "back tax statute" (Pope's Digest, § 13899): (1) The receiving by the state of proper reports from the taxpayer; (2) an admission on the part of the state that the taxes were not due; and (3) failure on the part of the state to take any action to collect the taxes. Since there was no admission by any of the state's officials that the taxes in dispute were not due, appellee argues that this statute may not properly be invoked as a defense herein.

There is nothing in the language of this statute from which it can be said that an admission by the state that the taxes are not due is a prerequisite to the operation of the statute. It is insisted, however, by appellee that such is the necessary effect of previous decisions of this court. We do not agree. We find nothing in any of these decisions which would justify a conclusion that the court predicated the right of the taxpayer to invoke the protection of this statute upon any admission by the state,

or any of its officials, that the tax in question was not due. It is the failure of the collecting officials to invoke promptly the statutory remedies in collecting taxes, rather than any affirmative action on the part of such officials, that enables the taxpayer, who has made an honest disclosure and payment in accordance therewith, to take advantage of this law. To adopt the construction of this "back tax law" contended for by appellee, and apparently followed by the lower court, would require that we read into the statute a material provision that the legislature did not see fit to put there. This we cannot do.

The public policy of the state is determined by the legislative branch of the government. The legislature, in adopting this "back tax law," took into consideration the manifold taxes and excises that are now being collected by various governmental taxing units, as well as the irreparable harm that might in many cases be done to business enterprise by permitting a taxpayer, who has, in good faith, tried to comply with the law, to be sued for "back taxes" long after the occurrence of the transactions creating the alleged tax liability. By this act it has declared it to be the policy of the state that whenever the taxpayer, in good faith, without collusion or fraud, makes to the state a full disclosure of all the facts essential to a calculation of the correct amount due from him for any excise or tax and pays the amount shown by his report to be due, and thereupon the statutory machinery for determining and collecting any deficiency of taxes is not put in motion by the state's collecting officials, the state may not afterwards sue to recover any delinquency in the taxes arising from transactions covered by such disclosure. It is an axiom that the state, in order to function properly, must collect taxes. A corollary, doubtless recognized by the legislature, in formulating the policy above stated, is that it is necessary for the state to exercise its power of taxation, aptly described as "the power to destroy," in such a manner as to permit the solvent survival of taxpayers able to pay the taxes required by the state for its support.

In the case at bar it appears that appellant filed regularly and in due time returns which reflected a complete disclosure of all of the sales in controversy, under which disclosure the ascertainment of total liability was only a matter of calculation, and that appellant paid promptly the amount shown to be due, under its asserted theory of liability, by said returns. No concealment, no fraud, no collusion in the matter is alleged or proved. Here then were present all the factors necessary under the "back tax statute" to preclude the bringing or maintaining of an action of this kind by the appellee.

We conclude, therefore, that this suit, in so far as it relates to any of the taxes involved herein not collected by appellant, was barred by the provisions of this statute.

It appears, however, from the stipulation that sales taxes in the aggregate amount of $50,845.73 were collected by appellant, during the period involved, from some of appellant's customers mentioned in the answer under an agreement with these consumers that payment of same to the revenue commissioner would be withheld until the question of tax liability was decided by the courts. We have determined that the transactions out of which these taxes arose were intrastate and did not constitute interstate commerce. Therefore these taxes were due by the consumers who paid them and were properly collected by appellant as agent for the state. The collection of these taxes was not reported by appellant to the revenue commissioner, and the right of the state to require appellant to pay over to it the amount of these taxes, admittedly now being held by appellant, cannot be defeated by operation of the "back tax law."

The decree of the lower court is accordingly modified so as to grant a recovery in favor of appellee against appellant for the sum of $50,845.73, and, as so modified, is affirmed. The costs of both courts will be assessed against appellant.

McFADDIN, J. (dissenting). I think the case at bar is ruled by the case of *Terminal Oil Co.* v. *McCarrol,* 201 Ark. 830, 147 S. W. 2d 352, rather than by the case of

*McCarról* v. *Hollis & Co.,* 201 Ark. 931, 148 S. W. 2d 167.
It appears to me that the effect of the majority opinion
in the case at bar is to overrule the Terminal Oil Company
case; and to this I am opposed.

Furthermore, the majority is holding:

(1) that the Back Tax statute applies, but

(2) that nevertheless the state shall recover the
money in escrow.

These two propositions seem to me entirely inconsistent. If the state loses the money under No. 1 above,
then it should not be able to recover part of the same
many under No. 2 above.

Here is the situation, as I view it:

The state sued in discovery to ascertain and collect
from appellant the amount of tax due. Appellant filed
answer, denying anything was due and stating that appellant
had made a full and complete report every month,
and therefore was entitled to the benefit of the limitations
in the Back Tax statute (§ 13899, Pope's Digest).
A stipulation was filed on February 25, 1943, stating
that the amount of the tax that would have been due—if
any—was $97,125.09. Then a second stipulation was filed
on April 7, 1943, which recited: "It is further stipulated
that of the said $97,125.09 Arkansas-Louisiana Gas Company
was during the aforesaid period paid the sum of
$50,845.73, which sum was paid by certain of the pipeline
industrial customers listed in said Exhibit 1. In this connection,
it is stipulated that the pipeline industrial customers
who made such payments each contended that
their purchases of gas constituted interstate commerce
and were not subject to Arkansas sales tax, and that in
each case the pipeline industrial customer making payment
did so upon the agreement and condition that Arkansas-Louisiana
Gas Company would withhold payment
to the State Revenue Commissioner of the money so
paid and would hold same in its possession until the
question of tax liability was finally determined by the
courts."

So far as I can find from the record the first information
ever received by the state about appellant having

collected this $50,845.73 was in the stipulation filed April 7, 1943. How can it be said that a full disclosure was being made by appellant to the state in the years 1936 to 1939 when the facts now disclose that during that period of time appellant was collecting and holding in its possession taxes in the amount of $50,845.73. This second stipulation seems to me to defeat appellant from claiming the benefits of the Back Tax Law. The effect of the majority holding is to release appellant from its failure to collect from all its customers, but to seize the money which appellant had collected from other customers similarly situated but whom appellant had required to pay the tax. This seems highly inequitable.