The Honorable Henry Morgan Prosecuting Attorney Ninth Judicial District 201 North 10th Arkadelphia, Arkansas 71923
Dear Mr. Morgan:
This is in response to your request for an opinion on two follow-up questions to Op. Att'y Gen. No. 92-357, regarding the collection of ad valorem taxes on utilities in Clark County.
The question posed in Opinion 92-357 involved the fact that the incorporated town of Gum Springs had never been included in the "distribution list" for ad valorem from utilities. The question posed was whether the town could recover any of the taxes to which it was entitled in previous years. In response to this question, Opinion No. 92-357 assumed from the use of the phrase "distribution list" that the taxes levied and collected pursuant to A.C.A. § 26-26-1614 and "distributed" pursuant to A.C.A. §26-26-1616 were at issue. This statute requires the Tax Division of the Public Service Commission, which assesses utility property statewide, to levy a state average millage rate to the property of intercounty bus lines, intercounty motor freight, airline, or water transportation companies. These taxes are collected by the Department of Finance and Administration which distributes them on a pro rata basis to the counties. The counties then distribute them to the taxing units on a pro rata basis. A.C.A. §26-26-1616(a)(2)(B).
Your current question indicates that these are in fact not the taxes at issue. You indicate that the taxes at issue were never assessed or levied on behalf of Gum Springs on utility property. Your question refers to the other types of utility property which the PSC assesses. Utility property other than bus lines, motor freight, airlines, water transportation companies and private car companies, is also assessed by the Tax Division of the PSC, but these taxes are levied and collected by the county in the same manner as other local taxes are collected. See A.C.A. §26-26-1612. This statute requires the Tax Division to certify to the proper official of the county "so much of the value of the property as has been assigned or apportioned to each county and the districts and towns thereof." Id. at (b). The assessment of these taxes by the PSC is therefore broken down by taxing unit, with a certain value apportioned to each, and certified to the counties. See also A.C.A. § 26-26-1611(3)(A). It is this fact which gives rise to the situation creating your question. The PSC did not, apparently until very recently, have any knowledge of the incorporation of the town of Gum Springs in 1962. It therefore has not, since that time, apportioned any value of utility property to the town of Gum Springs when it certifies the utility assessments to the county. The county, relying on the PSC list for levying these utility taxes, did not apply the Gum Springs millage rate to any valuation of utility property located in Gum Springs.[1] No utility taxes have therefore been levied on behalf of Gum Springs since its incorporation.
Your questions with regard to these facts are as follows:
 1. Can millage which has not been assessed, be assessed at this date as against utilities for Gum Springs?
 2. If you find that it can be collected in arrears, how far back can we go on the assessment and the collection?
 NOTE: The town has been incorporated since 1962. Millage was adopted at incorporation.
It is my understanding that the property in question has actually been "assessed." A value for the property in question was determined by the PSC, but no part of this value was apportioned to the town of Gum Springs. It was assessed by the PSC, appears on the assessment rolls, and its value was presumably apportioned between other local taxing entities. Thus, your first question really is whether property which has been assessed, but not apportioned to Gum Springs and subjected to the Gum Springs millage, can now be collected against utilities. It is my opinion that the answer to your first question is "no." In my opinion, A.C.A. § 26-34-107 prohibits the collection of these back taxes.[2] An answer to your second question is therefore unnecessary.
The relevant statute provides as follows:
 After the assessment and full payment of any general property, privilege, or excise tax, no proceedings shall be brought or maintained for the reassessment of the value on which the tax is based, except for actual fraud of the taxpayer. Failure to assess taxes as required by law shall be prima facie evidence of fraud.
This statute changed prior law, which would have authorized the collection of such taxes. See State ex rel. v. Chicago Mill Lumber Corp., 187 Ark. 65, 58 S.W.2d 951 (1933). The court there stated that under this statute:
 . . . it [is] perfectly evident that the State cannot recover where the property owner has made an assessment of property with the county assessor of the county, and has paid the taxes regularly assessed thereon, unless it can be shown that actual fraud has been practiced by the taxpayer. . . .
The "underassessment" of property was at issue in Chicago Mill Lumber, supra. Although the statute, A.C.A. § 26-34-107, appears only to prohibit the "reassessment of value" of the property, and not the collection of erroneously uncollected taxes, it was also held in Arkansas Louisiana Gas Co., v.Hardin, 206 Ark. 593, 176 S.W.2d 903 (1944), that where the state had failed to pursue any statutory remedies to collect unpaid sales taxes on reported sales by Arkla, it was barred by A.C.A. § 26-34-107 from thereafter collecting them. The taxes inHardin were simply uncollected. Arkla had reported the full extent of its sales which were subject to the tax, but had not paid any tax. The court noted the purpose of A.C.A. § 26-34-107
as follows:
 The legislature, in adopting this `back tax law,' took into consideration the manifold taxes and excises that are now being collected by various governmental taxing units, as well as the irreparable harm that might in many cases be done to business enterprise by permitting a taxpayer, who has, in good faith, tried to comply with the law, to be sued for `back taxes' long after the occurrence of the transactions creating the alleged tax liability. By this act it has declared it to be the policy of the state that whenever the taxpayer, in good faith, without collusion or fraud, makes to the state a full disclosure of all the facts essential to a calculation of the correct amount due from him for any excise or tax and pays the amount shown by his report to be due, and thereupon the statutory machinery for determining and collecting any deficiency of taxes is not put in motion by the state's collecting officials, the state may not afterwards sue to recover any delinquency in the taxes arising from transactions covered by such disclosure.
206 Ark. at 602. See also, State ex rel. Attorney General v.New York Life Insurance Co., 198 Ark. 820, 131 S.W.2d 639
(1939).
It is my opinion that the language above explaining the purpose of A.C.A. § 26-34-107 covers the situation you describe. Presumably the utilities involved did all that was required of them in assessing the property in question.[3] The PSC, not knowing of the incorporation of Gum Springs, simply did not apportion any of the value of the property assessed by the utilities to Gum Springs. In my opinion the language of the court above would prohibit the city, county, or PSC from now attempting to go back and collect these erroneously uncollected taxes from the utilities.
It is therefore my opinion that the answer to your first question is "no," the taxes may not now be assessed and collected against the utilities.[4]
An answer to your second question is therefore unnecessary.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana Cunningham Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] I assume that the city certified its millage to the county as required by A.C.A. § 26-73-202, and this millage was collected on other property in Gum Springs, but was simply not levied against any utility property in Gum Springs.
[2] There is an additional possibility, however, that the erroneously uncollected taxes may be recouped through an action on the surety bond of the officials involved. See e.g.,American Casualty Co. v. Quitman School District, 293 Ark. 457,739 S.W.2d 144 (1987). This question is one of fact which would require a construction of the applicable bonds of the officers involved.
[3] Cf. Op. Att'y Gen. No. 92-285, applying a three year statute of limitations for the collection of back taxes on property which was never assessed by the taxpayer.
[4] Of course, if the evidence indicates that some taxing units received more than their share of taxes because of this erroneous apportionment of value, the Town of Gum Springs is not prohibited by A.C.A. § 26-34-107 from pursuing any remedies it may have against the other taxing entities.